**UNITED STATES of America, Plaintiff-Appellee,**

v.

**CHARMER INDUSTRIES, INC., et al., Defendants,**

and

**Peerless Importers, Inc., Defendant-Appellant.**

**No. 1338, Docket 83–1135.**

United States Court of Appeals, Second Circuit.

Argued April 29, 1983.

Decided June 28, 1983.

---

Laura R. Handman, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Miles M. Tepper, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for the U.S.

John H. Gross, New York City (John H. Doyle, III, Daniel N. Sang, Anderson, Russell, Kill & Olick, P.C., New York City, on the brief), for defendant-appellant.

Therese L. Martin, Phoenix, Ariz. (Robert K. Corbin, Arizona Atty. Gen., Patrick M. Murphy, David W. Ronald, Asst. Attys. Gen., Phoenix, Ariz., on the brief), for Arizona Atty. Gen.

Before FRIENDLY, KEARSE and WINTER, Circuit Judges.

KEARSE, Circuit Judge:

This appeal presents questions as to whether and under what circumstances a presentence report prepared by the United States Probation Service ("Probation Service") for use of the district court in sentencing a defendant in a criminal case may be disclosed to persons other than the defendant, his attorney, or the prosecuting attorney. Defendant Peerless Importers, Inc. ("Peerless"),[1] appeals from an order of the United States District Court for the Eastern District of New York, Charles P. Sifton, *Judge,* denying its motion for a preliminary injunction to prevent use or publication by the Attorney General of the State of Arizona ("Arizona AG") of a presentence report on Peerless prepared by the Probation Service for the antitrust action underlying the present proceedings (hereinafter the "Peerless Report" or the "Report"), and to require the Arizona AG to return the Report to the Probation Service. Peerless contends that the Report was improperly disclosed to the Arizona AG and that the Arizona AG did not show adequate justification for the release of the Report. For the reasons below we agree and reverse.

## I

### A. *The Underlying Antitrust Action*

Peerless is a major wholesale distributor of liquor and wine in Metropolitan New York. In 1981, Peerless and several of its competitors were indicted for allegedly agreeing to raise liquor prices and reduce discounts on liquor and wine, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (1976). The defendants initially pleaded not guilty, but some months thereafter moved to change their pleas to nolo contendere. The government opposed the motions, stating its reasons and a summary of its factual contentions in a memorandum (hereinafter "Government's Plea Memorandum") that was submitted to the court under seal. This memorandum was eventually unsealed by the court and allowed to become part of the public record.

Judge Sifton granted the defendants' motions to plead nolo contendere. Thereafter, the Probation Service prepared presentence reports to assist the court in determining the appropriate fines to be imposed. The Peerless Report included, *inter alia,* financial data collected from Peerless itself, a description of the government's contentions, taken from the Government's Plea Memorandum, and certain hearsay information from unidentified law enforcement authorities relating to a Peerless officer. The hearsay statement has been the principal focus of the present controversy. The Report was disclosed to Peerless, whose attorney advised the court that it was "relatively complete," but urged that "unique extenuating factual circumstances" asserted by Peerless in support of its change of plea should also be considered, and that the $200,000 fine recommended by the government be reduced. No issue was taken with the Report's accuracy. On November 11, 1981, the court entered a judgment of conviction of Peerless, imposing a fine of $200,-000.

### B. *The Arizona Liquor License Proceedings*

In November 1981, a wholly-owned subsidiary of Peerless purchased the stock of Mazel Corporation ("Mazel"), a liquor wholesaler licensed by the State of Arizona.

---

**1.** Upon motion of Peerless, this Court ordered, *inter alia*, that all papers filed on this appeal be placed under seal, without prejudice to our modification sua sponte of the order. To the extent that portions of the record and briefs are used in the present opinion they are deemed unsealed, except that notwithstanding any reference to the presentence report on Peerless, the report itself remains under seal.

The Arizona Department of Liquor Licenses and Control ("DLLC") was notified that Peerless had entered a plea of nolo contendere in the antitrust action in New York. Mazel's licenses were thereafter renewed by the DLLC. Mazel then purchased two additional Arizona liquor wholesalers and merged all three companies into All American Distributing Co., Inc. ("All American") in May 1982.

In October 1982 the superintendent of the Arizona DLLC commenced a proceeding against All American to revoke its liquor licenses on the ground that the judgment of conviction of Peerless in the antitrust action, together with five disciplinary proceedings against Peerless or its wholly-owned subsidiary before state liquor control agencies in New York and Connecticut, indicated that All American's parent companies had failed to maintain the qualifications, capability, and reliability required under Arizona law. Following the submission by counsel for All American of various materials relating to the antitrust proceeding, the superintendent of the DLLC sought a copy of the Probation Service's presentence report on Peerless.

## C. Disclosure of the Report to the Arizona AG and the Proceedings Below

The first request for the Peerless Report was·made by Arizona Assistant Attorney General Therese L. Martin on February 8, 1983, in a telephone call to the Probation Service's Record Room in the Eastern District of New York. Martin identified herself to the clerk with whom she spoke and asked that the Peerless Report be sent to the Arizona AG. After a second telephone conversation with the same clerk on March 2, the Peerless Report was received by Martin on March 7. No formal or written request had been made. The Report was unaccompanied by any cover letter or memorandum.

Martin then attempted to telephone the attorney who had represented the govern-

ment in the antitrust suit to inquire whether her dissemination of the Report—including providing it to the DLLC hearing officer and making it part of the public record in Arizona—would violate any rules or regulations. After conversations with several government attorneys and a Probation Service official, Martin was advised that the Probation Service would communicate with Judge Sifton with respect to the release of the Report. Martin stated that she would not release the Report until receiving further word from government authorities.

On March 14, the Probation Service sent a memorandum to Judge Sifton stating that Peerless had applied for a liquor license in Arizona and asking the court's approval to release the Peerless Report to the Arizona AG in connection with the license application proceedings. Approval was granted on March 16, 1983. The Probation Service memorandum was inaccurate in its description of the Arizona proceedings, and it did not reveal that the Report had already been sent to the Arizona AG.

A Probation Service official informed Martin by telephone on March 22 of Judge Sifton's March 16 approval. Martin requested written confirmation that it was permissible for the Arizona AG to use the Report; she was advised to write a letter to the Chief United States Probation Officer in Brooklyn.

On March 25, Peerless obtained an order to show cause signed by Judge Sifton, temporarily restraining the Probation Service and the Arizona AG from publishing, discussing, or using the Report, and requiring them to show cause why a preliminary injunction should not issue. Following the submission of papers by the interested parties, and oral argument on April 1, 1983, the court denied Peerless's motion. Using the analysis required by Jackson Dairy, Inc. v. H.P. Hood & Sons, 596 F.2d 70, 72 (2d Cir.1979) (per curiam), for the issuance of a preliminary injunction,[2] the court found that Peerless could suffer irreparable injury

---

2. The standard in this Circuit for granting a preliminary injunction requires

 a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

Jackson Dairy, Inc. v. H. P. Hood & Sons, supra, 596 F.2d at 72.

to its reputation and good will as a result of public disclosure of certain statements in the Peerless Report.[3] It concluded, however, that Peerless had not shown that it was likely to succeed on the merits of its claim that there should be no disclosure of the Report by the Arizona AG. The court ruled that neither the early procedural irregularities—*i.e.,* the release of the Report prior to court approval, the failure to disclose the prior release when the request for approval was made, and the misdescription of the Arizona proceeding—nor the *ex parte* nature of the request to release the Report would warrant an order of nondisclosure. The court ruled that the contents of the Report also did not justify the preservation of confidentiality. It found that the Report contained no grand jury material that had not already been made public through the Government's Plea Memorandum. Further, it observed that under Fed. R.Crim.P. 32(c), presentence reports that are disclosed to a defendant must also be disclosed to the government and that the Rule does not bar the government from disclosing the information. The court viewed the Probation Service as a body with administrative expertise which had—if not initially, at least on reconsideration—exercised its informed judgment in determining that disclosure was appropriate, and the court viewed that determination as entitled to considerable deference. Accordingly, the court concluded that although Peerless had shown substantial questions going to the merits which were fair ground for litigation, it had not shown a likelihood that it would eventually prevail in establishing that disclosure was unwarranted. Finally, the court concluded that Peerless had not demonstrated that the balance of hardships tipped decidedly in its favor, because at no time had it denied the accuracy of any statements in the Peerless Report, and thus its interests failed to outweigh those of a state agency seeking information to assist it in determining whether the licenses of Peerless's subsidiary should be revoked.

This appeal followed, and on April 12, a panel of this Court stayed matters pending the determination of the appeal. For the reasons below, we now reverse the order of the district court.

## II

### A. *The Nature and Function of the Presentence Report*

The presentence report, use of which is governed to some extent by Fed.R.Crim.P. 32(c),[4] is a document prepared by the Proba-

---

3. The court rejected the suggestion that liquor license revocation might constitute irreparable injury, on the assumption that injury of that type would be compensable in damages. Given the immunity of states under the Eleventh Amendment to the Constitution from damage suits without their consent, *see Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and the immunity of federal employees and agencies from tort claims premised on discretionary acts, *see* 28 U.S.C. § 2680(a) (1976), the availability of an award, even assuming that damages would be reasonably susceptible to calculation, seems doubtful.

4. Fed.R.Crim.P. 32(c) provides, in pertinent part, as follows:
 (c) Presentence Investigation.
 (1) When Made. The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission of the court, the defendant waives a presentence investi-

gation and report, or the court finds that there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record.
 The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except that a judge may, with the written consent of the defendant, inspect a presentence report at any time.
 (2) Report. The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court.
 (3) Disclosure.
 (A) Before imposing sentence the court shall upon request permit the defendant, or his counsel if he is so represented, to read the

tion Service for the district court prior to the court's imposition of sentence upon the defendant. In preparing such a report, the Probation Service acts as an arm of the court, see Fed.R.Crim.P. 32(c)(1); cf. 18 U.S.C. § 3654 (1976) (probation officers appointed by the court), and commences its investigation at the instance of the court.

■ The principal function of the presentence report is to assist the court in determining the appropriate sentence. See Administrative Office of the United States Courts, The Presentence Investigation Report 1 (1978) ("AO Presentence Monograph"). Secondarily, the report may assist the Federal Bureau of Prisons and the United States Parole Commission in such matters as offender classification and early release decisions,[5] may aid probation officers in supervising probationers and parolees, and may serve as a source of information for research. Id. Notwithstanding these secondary uses, the presentence report is a court document and is to be used by nonjudicial federal agencies and others only with the permission of the court.[6] See id. at 27 & n. 3.

In order to be of greatest assistance to the court, the report should be as complete as possible, containing "[a]ll objective information which is significant to the decision-making process." Id. at 1; see Fed.R.Crim.P. 32(c)(2). To this end, the report is designed to

> describe[ ] the defendant's character and personality, evaluate[ ] his or her problems and needs, help[ ] the reader understand the world in which the defendant lives, reveal[ ] the nature of his or her relationships with people, and disclose[ ] those factors that underlie the defendant's specific offense and conduct in general.

AO Presentence Monograph at 1.

■ The report normally contains information from a variety of sources. These include the defendant himself, members of his family, cooperating public and private welfare agencies, law enforcement agencies, employers, and others who know the defendant. There are no formal limitations on the contents of presentence reports. The restrictions imposed by the Federal Rules of Evidence with respect to trial evi-

report of the presentence investigation exclusive of any recommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons; and the court shall afford the defendant or his counsel an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.

(B) If the court is of the view that there is information in the presentence report which should not be disclosed under subdivision (c)(3)(A) of this rule, the court in lieu of making the report or part thereof available shall state orally or in writing a summary of the factual information contained therein to be relied on in determining sentence, and shall give the defendant or his counsel an opportunity to comment thereon. The statement may be made to the parties in camera.

(C) Any material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the government.

(D) Any copies of the presentence investigation report made available to the defendant or his counsel and the attorney for the government shall be returned to the probation officer immediately following the imposition of sentence or the granting of probation, unless the court, in its discretion otherwise directs.

5. The Parole Commission must consider a presentence report if it is available and relevant, 18 U.S.C. § 4207 (1976); and if the report is to be used by the Commission in a parole determination proceeding, the prisoner must be given reasonable access to it as well. Id. § 4208(b).

6. As a court document, the presentence report is not within the purview of either the Freedom of Information Act, 5 U.S.C. § 552 (1976 & Supp. V 1981), or the Privacy Act, 5 U.S.C. § 552a (1976 & Supp. V 1981), notwithstanding its use or retention by agencies such as the Bureau of Prisons and the Parole Commission. See FDIC v. Ernst & Ernst, 677 F.2d 230 (2d Cir.1982); Cook v. Willingham, 400 F.2d 885 (10th Cir.1968); AO Presentence Monograph at 27–28 & n. 3.

dence are not applicable. *See* Fed.R.Evid. 1101(d)(3); *Gregg v. United States,* 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442 (1969); *Williams v. New York,* 337 U.S. 241, 249–52, 69 S.Ct. 1079, 1084–1086, 93 L.Ed. 1337 (1949); *United States v. Fatico,* 603 F.2d 1053, 1054 (2d Cir.1979) ("*Fatico II*"), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); *United States v. Fatico,* 579 F.2d 707, 711–13 (2d Cir.1978) ("*Fatico I*"); *United States v. Robin,* 545 F.2d 775, 779 (2d Cir.1976). Thus, the report may well contain hearsay statements that are not subject to cross-examination, *Williams v. New York, supra,* or information bearing no relationship to the crime for which the defendant is to be sentenced, *Gregg v. United States, supra,* 394 U.S. at 492, 89 S.Ct. at 1137. *See* 18 U.S.C. § 3577 (1976) ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Frequently information disclosed to probation officers during the presentence investigation is given to the investigators in confidence. For example, a defendant may disclose his income but not wish to have those figures made public. A psychiatrist may provide an evaluation whose availability would best be restricted to the court and those involved in the defendant's rehabilitation. Law enforcement agencies frequently wish to protect the sources of information in their records and will sometimes exact a promise of confidentiality from the probation officer. In order to ensure the availability of as much information as possible to

assist in sentencing, the courts have generally determined that presentencing reports should be held confidential. *See, e.g., United States v. Martinello,* 556 F.2d 1215, 1216 (5th Cir.1977) (per curiam); *United States v. Greathouse,* 484 F.2d 805, 807 (7th Cir. 1973); *United States v. Fischer,* 381 F.2d 509, 511–13 (2d Cir.1967), *cert. denied,* 390 U.S. 973, 88 S.Ct. 1064, 19 L.Ed.2d 1185 (1968). In affirming a refusal to disclose to a defendant the presentence report on a codefendant, the court in *Martinello* stated as follows:

> Presentence reports are not public records but rather confidential reports to the trial judge for use in his effort to arrive at a fair sentence. *United States v. Greathouse,* D.C.M.D.Ala., 188 F.Supp. 765 (1960). As other courts have held, requiring disclosure of a presentence report is contrary to the public interest as it may adversely affect the sentencing court's ability to obtain data on a confidential basis from the accused, and from sources independent of the accused, for use in the sentencing process.

556 F.2d at 1216.

 Nonetheless, confidentiality of the presentence report is not maintained strictly, for considerations of due process require that the court not impose a sentence on the basis of information that is materially false. *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Robin, supra,* 545 F.2d at 779. Thus, Rule 32(c)(3), as presently framed, generally requires that prior to imposing sentence, the district court, upon request, permit the defendant or his counsel to read the presentence report.[7] The basis for this requirement is the belief that

---

7. Rule 32(c)(3)(A) provides that the probation officer's recommendation, if any, as to sentence, is not to be disclosed, and it allows the court to withhold other information contained in the report in order to protect confidential sources or the safety of the defendant or other persons.

As presently formulated, the Rule does not require the court to disclose the presentence report to the defendant if no request is made, *United States v. Ruiz,* 580 F.2d 177 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 732, 58 L.Ed.2d 712 (1978); 3 C. Wright, *supra,* § 524, at 73, or to inform the defendant that the report would be disclosed to him or his counsel if a

request were made, *see.* Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv.L.Rev. 1615, 1641 (1980). In many cases in which no request is made, the court does not make disclosure. *Id.* at 1640–43. Recent proposals for the amendment of Rule 32, which have been approved by the Supreme Court and will become effective on August 1, 1983, absent Congressional action, would require the district court, *inter alia,* to make disclosure to both the defendant and his counsel, whether or not a request had been made. *See Amendments to the Rules of Criminal Procedure for the U.S. Dis-*

[t]he best way of insuring accuracy is disclosure with an opportunity for the defendant and counsel to point out to the court information thought by the defense to be inaccurate, incomplete, or otherwise misleading.

Fed.R.Crim.P. 32(c) advisory committee note (1974); *see* 3 C. Wright, *Federal Practice & Procedure* § 524, at 72, 77 (2d ed. 1982). If the report is disclosed to the defendant or his attorney, it must also be disclosed to the attorney for the government. Fed.R.Crim.P. 32(c)(3)(C).

 After disclosing the presentence report pursuant to Rules 32(c)(3)(A) and (C), the court must give the defendant or his counsel an opportunity to comment on it. If the defendant takes the position that there are factual inaccuracies in the report, the court, in its discretion, may simply disregard the disputed material, *see, e.g., Gardner v. Florida,* 430 U.S. 349, 359–60, 97 S.Ct. 1197, 1205–1206, 51 L.Ed.2d 393 (1977) (plurality opinion); or, it may allow the defendant to comment without the presentation of testimonial evidence, *see, e.g., United States v. Needles,* 472 F.2d 652, 657–58 (2d Cir.1973); or it may request corroboration from the government, *id.* at 658; or it may hold an evidentiary hearing, *see United States v. Fatico,* 441 F.Supp. 1285 (E.D.N.Y.1977), *rev'd on other grounds,* 579 F.2d 707 (2d Cir.1978). If persuaded that statements in the presentence report are inaccurate, the sentencing judge is not permitted to rely on those statements in imposing sentence. Whether the decision to disregard disputed statements is made with or without benefit of an evidentiary hearing, the court usually will note its nonreliance but will not cause the inaccurate statements to be deleted from the presentence report.

*See United States v. Legrano,* 659 F.2d 17, 18 (4th Cir.1981); Note, *A Proposal To Ensure Accuracy in Presentence Investigation Reports,* 91 Yale L.J. 1225, 1235 & n. 59 (1982).[8]

### B. · Treatment of Third-Party Requests for Presentence Reports

Although Rule 32(c) sets the standards for release of presentence reports to defendants, their counsel, and the prosecuting attorneys, it is silent as to whether and under what circumstances such reports may be disclosed to "third persons,"—by which we refer to persons or entities other than the courts, the Parole Commission, the Bureau of Prisons, and probation officers. The implication of Rule 32(c)(3)(D) is that the report should not routinely be made available to third persons, for that subpart provides that, unless the court directs otherwise, any copies of the report that are provided to the defendant, his counsel, or the attorney for the government must be returned to the probation officer immediately after sentence is imposed. The history of Rule 32(c) reflects a longstanding judicial view that confidentiality should be maintained. It was not until 1975 that the rule required a district judge to disclose the report to a defendant who requested it. The 1974 Advisory Committee Report that immediately preceded adoption of this requirement observed that "[m]ost members of the federal judiciary have, in the past, opposed compulsory disclosure." Fed.R. Crim.P. 32(c) advisory committee note (1974) (citing *inter alia,* a survey of all federal judges); *see also* 3 C. Wright, *supra,* at § 524.

---

*trict Courts,* H.R.Doc. No. 55, 98th Cong., 1st Sess. 61 (1983) ("H.R.Doc. No. 55").

**8.** The proposed 1983 amendments adopted by the Supreme Court include a new provision that would, as set forth below, require the sentencing court to clarify its treatment of any statement that was disputed, but they would not require disputed or inaccurate statements to be deleted from the report:

If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccu-

racy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission. H.R. Doc. No. 55, *supra,* at 63.

In light of the evolution of Rule 32, and the prevailing judicial view that the public availability of presentence reports would likely inhibit the flow of information to the sentencing judge, some courts appear to have interpreted Rule 32(c) as imposing an outright prohibition on disclosure of the reports to third persons. *See United States v. Mayse,* 467 F.Supp. 1339 (E.D.Tenn.1979) ("except to the extent that disclosure of a presentence report is permitted under circumstances adverted to in [Rule 32(c)], it is a confidential document and not to be disclosed to anyone"); *United States v. Dingle,* 546 F.2d 1378, 1381 (10th Cir.1976) ("rule does not allow disclosure of the presentence report to the prosecution in a separate trial"). Most courts, however, have concluded, as do we, that Rule 32(c) simply does not reach the question of disclosure to third persons, and have sought to balance the desirability of confidentiality against the need of the moving party for disclosure of the document. In most cases, in a variety of circumstances, these courts have found disclosure unwarranted.[9] *See, e.g., United States v. Martinello, supra,* 556 F.2d at 1216 (no disclosure to a codefendant); *United States v. Walker,* 491 F.2d 236 (9th Cir.) (same), *cert. denied,* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 768 (1974); *United States v. Greathouse, supra,* 484 F.2d at 807 (same); *United States v. Figurski,* 545 F.2d 389 (4th Cir.1976) (no disclosure of report regarding a witness); *United States v. Evans,* 454 F.2d 813, 820 (8th Cir.) (same), *cert. denied,* 406 U.S. 969, 92 S.Ct. 2423, 32 L.Ed.2d 668 (1972); *United States v. Krause,* 78 F.R.D. 203, 204 (E.D.Wis.1978) (no disclosure to defendant's judgment creditor); *Hancock Brothers v. Jones,* 293 F.Supp. 1229 (N.D.Cal.1968) (no disclosure to civil antitrust plaintiffs); *cf. United States v. Mayse, supra,* 467 F.Supp. 1339 (no disclosure to a psychiatrist notwithstanding defendant's consent). No reported case, and only one unreported case, has been called to our attention in which a court has ordered the disclosure of a presentence report to a third party. *See United States v. Bernstein,* CR 81 160 (E.D.N.Y. Jan. 12, 1982) (transcript of hearing at which court

9. In setting guidelines for probation officers conducting presentencing investigations, the Administrative Office of the Courts has advised that, except as allowed by Rule 32(c), there should be no disclosure of presentence reports without the approval of the court, AO Presentence Monograph at 2–3, and has recommended that disclosure not be permitted for prosecutorial purposes:

There are a few circumstances in which disclosure may be warranted. In some instances the court delegates to the probation office the responsibility for determining what information from the report may be disclosed. In most instances, if release of the information is otherwise deemed proper, it is best to obtain the defendant's written consent for release of information.

Prosecutorial use of a presentence report is incompatible with the purpose of the report as a sentencing and correctional tool. Candor and openness on the part of the report's primary source, the defendant, may be stifled if the report is available for prosecutorial or investigative use.

*Id.* at 3. We express no view as to whether notice should be given to a defendant prior to the disclosure of his presentence report.

The American Bar Association also has recommended that presentence reports be maintained as confidential documents, and it apparently would limit their disclosure, insofar as third persons are concerned, to persons or agencies dealing with the defendant's rehabilitation:

Standard 18–5.3. Presentence report: disclosure; general principles

The presentence report should not be a public record. It should be available only to the following persons or agencies under the conditions stated:

(a) The report should be available to the sentencing court for the purpose of assisting it in determining the sentence. The report should also be available to all judges who are to participate in a sentencing council discussion of the defendant (standard 18–8.1).

(b) The report should be available to persons or agencies having a legitimate professional interest in the information likely to be contained therein. Examples of such persons or agencies would be a physician or psychiatrist appointed to assist the court in sentencing, an examining facility, a correctional institution, or a probation or parole department.

(c) The report should be available to reviewing courts where relevant to an issue on which an appeal has been taken.

(d) The report should be available to the parties under the conditions stated in standard 18–5.4.

ABA, Sentencing Alternatives and Procedures § 18–5 (1979).

explained that it had disclosed report to a third person in the interests of justice).[10]

Few of these courts have discussed the criteria that third-party requests must meet to justify disclosure. Those that have done so have set a standard approaching that for the release of grand jury materials, as set forth in, *e.g., Illinois v. Abbott & Associates,* —— U.S. ——, 103 S.Ct. 1356, 1361 & n. 14, 75 L.Ed.2d 281 (1983); *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218 & n. 8, 99 S.Ct. 1667, 1672 & n. 8, 60 L.Ed.2d 156 (1979); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). These Supreme Court cases establish that for the release of grand jury materials, which are traditionally protected by a "General Rule of Secrecy," Fed.R.Crim.P. 6(e)(2), the movant must make a particularized showing of compelling need; proof of mere relevance, economy, and efficiency will not suffice. The standards applied with respect to presentence reports have been similar, as disclosure has been denied in the absence of "the most compelling reasons," *United States v. Krause, supra,* 78 F.R.D. at 204, or, when sought by a defendant, absent a showing that the report is "absolutely essential to effective presentation of a defense," *United States v. Cyphers,* 553 F.2d 1064, 1069 (7th Cir.), *cert. denied,* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977). In the most thorough exposition of the policy considerations warranting a strict standard for third-party disclosure, the court in *Hancock Brothers v. Jones, supra,* 293 F.Supp. 1229, required a compelling showing that "lifting confidentiality is required to meet ends of justice." *Id.* at 1233, *quoted in United States v. Figurski, supra,* 545 F.2d at 391; *see United States v. Bernstein, supra.* In denying disclosure of the presentence report to civil antitrust plaintiffs, the *Hancock Brothers* court, recognizing (pre-1975) that disclosure even to a defendant was not mandatory, stated as follows:

The need for disclosure to plaintiffs in this civil action falls far short of the compelling reasons for disclosing presentence reports to defendants who are the subjects of such reports. The reasons for disclosing the report to criminal defendants exist in virtually every criminal case in which the sentencing judge relies upon the report before imposing sentence. Yet, the policies for maintaining confidentiality remain steadfast in many cases and the reports are not disclosed as a matter of course. *A fortiori,* information contained in a presentence report should not be disclosed to third parties unless lifting confidentiality is required to meet ends of justice.

293 F.Supp. at 1233. The court then rejected any notion that disclosure of the report to the defendant provided a ground for disclosure to third parties:

Disclosure of probation reports to criminal defendants is based on the strong overriding policy of protecting interests of the criminally-accused. At times, nondisclosure to the defendant dangerously approaches deprivation of the defendant's constitutional rights.... The same principles apply when grand jury secrecy is broken for the benefit of a criminal defendant.... If disclosure to the defendant is used as a basis for disclosure to the third party litigants in a civil proceeding, the criminal defendant's access to information via Rules 32(c) and 6(e) of the Fed.R.Crim.P. is seriously hampered. The defendant is thereby compelled to choose between exercising a recognized privilege or maintaining the confidential nature of such information. This result is undesirable as well as unconstitutional in instances where the Constitution requires giving the defendant access to such information....

Use of disclosure to defendants as a ground for disclosure to third parties is questionable for other reasons. The effi-

10. In *U.S. Industries, Inc. v. United States District Court,* 345 F.2d 18 (9th Cir.1965), on which the Probation Service and the Arizona AG place heavy reliance, the private antitrust plaintiffs sought, and obtained, the disclosure of a government memorandum that had been provided to the probation officer prior to the sentencing of the defendants. The presentence report itself apparently was neither requested nor disclosed.

cacy of the pre-sentencing and grand jury processes is lessened not only by disclosure to defendants, but also by disclosure to any other persons. Reprisal by the defendant is only one event to guard against in promoting free and untrammeled disclosures by persons who have information necessary for sentencing or grand jury purposes. Certainly, a defendant who gains access to such information is not free to disclose it to whomever he pleases. The need for confidentiality remains despite the fact that the information has been made available to the criminal defendant.

*Id.* at 1234 (citations omitted).

■ We agree with the rationale of *Hancock Brothers* and with its conclusion that the district court should not authorize disclosure of a presentence report to a third person in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice. We regard the presentence report as bearing many of the characteristics—and frailties— of material presented to a grand jury. Grand jury secrecy is designed to accommodate several interests, reflecting the facts, *inter alia,* that only limited procedural safeguards are available to persons appearing before the grand jury, that hearsay testimony is normally allowed, that there is no right of cross-examination, and that frequently accusations are made for which no indictment is ever returned. *See, e.g., Illinois v. Abbott & Associates, supra,* 103 S.Ct. at 1360 n. 8, 1361 n. 11; *Douglas Oil Co. v. Petrol Stops Northwest, supra,* 441 U.S. at 218–19 & n. 8, 99 S.Ct. at 1672–1673 & n. 8. As the cases discussed in Part IIA above reveal, these considerations are also applicable, to a significant degree, to presentence reports. No formal limitations inhibit the collection of information for such reports. The reports frequently contain hearsay and information not relevant to the crime charged. If a defendant challenges the accuracy of a statement in the report, the court may, in its discretion, decline to hold an evidentiary hearing with respect to the challenges. Even where an evidentiary hearing is convened, the government may be permitted to rest simply on proof that

the source of the probation officers' hearsay information is reliable and be excused from producing—or identifying—an informant who provided the disputed information. Hence there may be no opportunity, even at a hearing, for the defendant to confront the maker of the disputed hearsay statement. Finally, even where the defendant's challenge to a presentence report statement has been "successful," in the sense that the district court has determined that it will not rely on the statement in imposing sentence, the statement nevertheless remains in the report. Thus, although the safeguards provided by Rule 32(c) ensure that any material misinformation in the report that is called to the court's attention will not affect the sentencing decision, they do not mean that the presentence report contains no such misinformation.

Further, notwithstanding the goal of accuracy in presentence reports, there is no requirement that the defendant voice his objection to any statement with which he disagrees, and we assume that not all statements with which a defendant might take issue are actually challenged. Indeed, in a significant number of cases, the defendant does not even request disclosure of the presentence report. *See* Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv.L. Rev. 1615, 1641 n. 141 (1980). In part the failure to challenge statements made in disclosed reports may result from a judgment that the statement is relatively inconsequential in the context of sentencing, or that it may later be challenged in the context of the defendant's review for parole, *see* 28 C.F.R. § 2.19(c) (1982); *see also* note 5 *supra,* or that the challenge is not worth the effort. For example, in the present case, we do not know whether Peerless's failure to challenge the Report's hearsay statement from law enforcement authorities about a Peerless officer resulted from its indisputability. We do know that no individuals were defendants in the antitrust action, that the only punishment to be imposed on Peerless was a fine, and that Peerless knew prior to responding to the Report

what size fine the government had recommended. It could have been Peerless's view that since the hearsay statement, even if confuted, would remain in the report, the challenge would be a waste of effort. Defendants may be deterred from disputing statements in presentence reports because the resolution of such disputes might tend to delay sentencing. In all the circumstances, therefore, although the failure of a defendant to dispute the truth of a sentence in the report justifies the court's use of that statement in reaching a sentencing decision, see *Fatico I, supra*, 579 F.2d at 713, we believe the presumption of accuracy is not necessarily warranted in an unrelated context. *See McCormick's Handbook of the Law of Evidence* § 270 (Cleary ed. 1972) (propriety of inferring an admission from silence depends in part on incentive to respond).

■ Accordingly, in light of the nature of the presentence report as a court document designed and treated principally as an aid to the court in sentencing, we conclude that the report may not properly be disclosed without authorization by the court. Given the desirability of ensuring the free flow of information to the court and the fact that the document can and frequently does serve its principal purpose notwithstanding the presence of misstatements—on which the court simply declines to rely—or disputed statements, we conclude that the court should not release a presentence report to a third person unless that person has shown a compelling need for disclosure to meet the ends of justice.

### III

In the present case, these principles have implications for the framework within which the district court should have made its decision, for our standard of appellate review, and for the merits of the case.

#### A. *Standards of Decision and Review*

■ The present case arises after a somewhat unusual—we hope—sequence of events, for the Peerless Report was disclosed to the Arizona AG by the Probation Service without the court's authorization. While this did not mean that the disclosure could not thereafter be approved,[11] neither should it have meant that the normal burden to be borne by the party seeking disclosure was eliminated. In fact, however, the latter is what occurred. The court treated Peerless's motion as no more than a normal motion for a preliminary injunction, placing on Peerless the heavy burden of showing irreparable injury and either likelihood of proving that the Arizona AG should not be allowed to use the Report or actual hardship to Peerless outweighing the interests of Arizona. Peerless had been forced to move for equitable relief, however, because the Arizona AG obtained the Report in an unauthorized fashion from employees of the Probation Service before making any formal application to the court or to any responsible official of the Probation Service or the Department of Justice for its release. As we have discussed in Part II above, there are strong prudential reasons for safeguarding the confidentiality of presentence reports and for disclosing them to third persons only when justice demands it. These prudential interests did not disappear simply because an arm of the court had made an unauthorized disclosure; and the Arizona AG, whose rather irregular requests to a file room clerk had triggered the improper action, should not have gained thereby a significant procedural advantage in the ensuing judicial proceeding. In short, the court should have recognized that the burden remained on the Arizona AG to make a compelling showing that the ends of justice required his possession of the Peerless Report.

Ordinarily on an appeal from the denial of a preliminary injunction, our function is simply to determine whether the district court abused its discretion in denying relief. *See Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir.1981). Since, however, it was inappropriate for the district court to treat the Peerless request

---

11. The district court properly did not rest on its March 16, 1983 order of approval, since that order was entered on the basis of inaccurate and incomplete representations to the court.

as a commonplace motion for such an injunction, the ordinary standards of review of the denial of such a motion are inapposite. Accordingly, we review the decision below as if the unauthorized release of the Report had not occurred and as if the district court had simply granted a motion to disclose.

■ We do not mean to suggest that the question whether to release a presentence report to a third person is not also a matter committed to the district court's discretion; the court of course has a fair measure of discretion in weighing the competing interests in order to determine whether or not the person seeking disclosure has shown that the ends of justice require disclosure. Deference to. the decision of the district court is not warranted in the circumstances of the present case, in part because the court misallocated the burden of proof, and in part because, in so doing, it failed to consider pertinent factors we discuss below.

B. *The Merits of Disclosure to the Arizona AG*

■ A central element in the showing required of a third person seeking disclosure is the degree to which the information in the presentence report cannot be obtained from other sources. While the burden of showing need may be less when the movant is a public body seeking to perform a public duty, *cf. United States v. Sobotka,* 623 F.2d 764, 768 (2d Cir.1980) (Bar grievance committee seeking grand jury materials failed to meet even lesser burden because it made no showing of "particularized need" for the materials), than when the movant is a private person, the Arizona AG's showing of need was negligible. This is largely because nearly all of the pertinent information in the Report also appears in the Government's Plea Memorandum. The latter is a public document;

the Arizona AG has it. To the extent that the information appears in the public document, the Arizona AG cannot show a compelling need for disclosure of the Report.

At the oral argument of this appeal, we were informed that there are two parts of the Report pertinent to the DLLC proceeding that do not appear in the Government's Plea Memorandum: one states the salaries of Peerless's officers; the other is the hearsay statement of law enforcement authorities. Neither justifies release of the Report.

■ As to the salaries, the information in the Peerless Report was provided by Peerless itself, and it would be difficult indeed for us to believe that the Arizona DLLC cannot obtain the information from Peerless. State regulatory agencies routinely are able to obtain financial data from persons who wish to carry on activities licensed by the state. The Arizona AG has not suggested that Peerless is unwilling to furnish this information. Thus the presence of salary data in the Report does not indicate that disclosure of the Report is needed.

■ As to the Report's hearsay statement of law enforcement authorities, we have similar, as well as other, concerns. This portion of the Report cites law enforcement authorities as having received and provided to the presentence investigator certain information. The Report does not identify the law enforcement authorities; nor does it identify their informant. Thus, introduction of the Report—itself hearsay—in the Arizona DLLC hearing would subject Peerless to triple hearsay, with the identities of two declarants undisclosed.[12] Such use does not comport with our normal notions of rudimentary fairness, and facilitation of such use hardly seems to

---

12. The district court apparently assumed that under the Federal Rules of Evidence this triple hearsay proof would not be admitted in evidence in the DLLC proceeding and that the court was merely being asked to sanction disclosure as a discovery device. This was an erroneous view of the law, *see* Ariz.Rev.Stat. Ann. § 41–1010(A)(1) (West Supp.1982–1983) (administrative hearings to be conducted

"without adherence to the rules of evidence required in judicial proceedings"); *Galaz v. Moore,* 20 Ariz.App. 102, 510 P.2d 413, 415 (Ariz.App.1973) (upholding admission of hearsay in proceeding on application for transfer of liquor license), and the brief submitted by the Arizona AG on this appeal clearly reveals that the Report is sought for use as evidence.

promote the ends of justice. It is no answer to argue, as does the Arizona AG, that Peerless has the right to respond in the DLLC proceeding; the unadorned hearsay statements are susceptible neither to cross-examination nor, with no information supplied as to the reliability of the informant, to evaluation. Nor is the introduction of such proof legitimated by Peerless's failure to challenge the hearsay statement during the sentencing proceedings. As discussed in Part II.B. above, Peerless's silence in the context of sentencing does not warrant the inference that Peerless would have conceded accuracy for all purposes. The Arizona AG has made no showing that it cannot learn from government attorneys the identities of the law enforcement officials who have collected the pertinent information, thereby gaining access to at least as much information as is contained in the Report. Indeed there is an indication in the record that additional information was obtained. In the circumstances, we conclude that the Arizona AG has not demonstrated that disclosure of the Peerless Report would serve the ends of justice.

▆▆▆▆▆▆ Finally, we note that the district court apparently relied to a great extent on the view of the Probation Service that the disclosure of the Report should be approved. We think the "considerable deference" (April 1, 1983 hearing transcript at 24) accorded by the district court to the "administrative expertise" (*id.*) of the Probation Service was unwarranted. The matter of whether third persons should have access to presentence reports is properly committed not to the discretion of the Probation Service but to the discretion of the court. As an arm of the court the Probation Service's functions are to make presentence investigations and to supervise probationers, not to act as a tribunal to determine whether the ends of justice require the disclosure of a presentence report to a third person. The ends-of-justice standard encompasses many considerations on which the Probation Service's administrative expertise has no particular bearing. Indeed, to the extent that its role is the gathering of information, the Probation Service might be expected, if disclosure would not compromise promises of confidentiality made to the sources of the information requested, to presumptively favor the request of a third person who might one day be a potential source of information.[13] In sum, the district court should not have deferred to the views of the Probation Service but should have exercised its own discretion in balancing the competing considerations in order to determine whether the Arizona AG had shown a compelling need for disclosure of the Peerless Report in the interests of justice. Had it done so, we believe it would surely have found disclosure unjustified.

## CONCLUSION

The order of the district court is reversed and the cause is remanded for entry of an injunctive order requiring the Arizona AG to return to the court the Peerless Report and all copies and extracts made of it, prohibiting his publication or other use of any portion of the Report that is not already publicly available, and for such other relief as, consistent with this opinion, may be appropriate. The stay granted by this Court on April 12, 1983, shall remain in effect pending entry of the mandated injunctive relief in the district court.

---

**13.** Along these lines, we note that the factual basis for the court's assuming a reasoned and informed judgment on the part of the Probation Service in the present case was tenuous. That body had exercised no discretion whatever prior to the initial release. Further, when the Probation Service sought court approval for disclosure it apparently had misperceived the basis for the Arizona AG's request, as it misrepresented to the court the nature of the Arizona proceedings. And with a distressing lack of candor, the Probation Service requested judicial approval to disclose without revealing that the Report had already been disclosed. The lack of candor may have bespoken a lack, as well, of objectivity. In opposition to Peerless's motion, the Probation Service made no further presentation to the court but relied solely on the arguments of counsel to support disclosure.