**UNITED STATES of America,**
**Plaintiff,**

v.

**Teddy MOLINA, Defendant.**

**No. 5:01–CR–354–(HGM).**

United States District Court,
N.D. New York.

Oct. 7, 2002.

---

**460**

Joseph A. Pavone, United States Attorney for the Northern District of New York (Richard R. Southwick, Assistant United States Attorney, of Counsel), Syracuse, NY, for Plaintiff.

Robert G. Wells, Esq., Syracuse, NY, for Defendant.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

Currently before the court is defendant Teddy Molina's letter-motion seeking the release of a co-defendant's presentence report, this co-defendant having testified against defendant at his sentencing hearing.[1] For the reasons set forth below, defendant's motion is DENIED.

## BACKGROUND

As a result of events that occurred on August 1, 2001, in Syracuse, New York,

1. Originally, in anticipation of all three co-defendants testifying, defendant's letter-motion sought the release of all three co-defendant's presentence reports. Only one of the co-defendants testified on behalf of the United

defendant and co-defendants Jose Cireno, Carlos Belez and Irvin Avilés Manso were charged with conspiring to commit a robbery affecting interstate commerce in violation of 18 U.S.C. § 1951. On August 15, 2001, a federal grand jury returned a four-count indictment charging defendant with violations of 18 U.S.C. §§ 922(j); 922(k); 922(g)(1); and, 26 U.S.C. § 5871. Defendant signed a plea and cooperation agreement whereby he entered a plea of "Guilty" to Count Four of the subsequent indictment, 01–CR–354, which charged him with Possession of Firearms As a Prohibited Person in violation of 18 U.S.C. § 922(g)(1). Similarly, co-defendants Jose Cireno, Carlos Belez and Irvin Avilés Manso signed plea and cooperation agreements.

Co-defendant Cireno subsequently testified on behalf of the government at defendant's sentencing hearing and was subjected to cross-examination by defendant's counsel. Defendant's counsel moved for the release of Cireno's presentence report arguing that the release was necessary so as to obtain a copy of Cireno's rap sheet because he had been otherwise unsuccessful in obtaining a copy. Presumably, defendant's counsel sought the release of Cireno's presentence report because it possibly contained impeachment material. Defendant's counsel based his argument on the Jencks Act, 18 U.S.C. § 3500.

## DISCUSSION

*A. Presentence Reports as Jencks Act Material*

The Jencks Act, in pertinent part, provides:

States at defendant's sentencing hearing thereby rendering the expressed need for the other two co-defendants' presentence reports moot.

After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness *in the possession of the United States* which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use. 18 U.S.C.A. § 3500(b) (emphasis added).

In *United States v. Canniff,* 521 F.2d 565 (2d Cir.1975), the Second Circuit Court of Appeals held that the Jencks Act, 18 U.S.C.A. § 3500, did not apply to the disclosure of presentence reports. The Second Circuit reasoned that, because the probation department acted as an extension of the United States Courts rather than as an extension of the United States Attorney, the prosecutor "had no right to or control over copies of the report." *Id.* 521 F.2d at 573. Furthermore, the prosecution never had possessed the requested materials, and the Second Circuit posited that the government "cannot be required to produce that which it does not control and never possessed or inspected." *Canniff,* 521 F.2d at 573.

In *United States v. Moore,* 949 F.2d 68 (1991), the Second Circuit Court of Appeals once again examined the release of presentence reports to third parties based on the Jencks Act. Invoking confidentiality as its chief concern, the Second Circuit denied a motion seeking the release of co-defendants' presentence reports. *See Id.* 949 F.2d at 71. The Second Circuit denied the motion despite the fact that while the United States Attorney's Office did not have access to the presentence reports, it nevertheless possessed the presentence reports in question. *See Id.* The Second Circuit observed that Congress enacted the Jencks Act in 1957 at which time not even defendants themselves were entitled to see their own presentence reports as a matter of right; defendants did not enjoy such a right until 1975. The Second Circuit reasoned that to hold the Jencks Act, enacted by Congress nearly two decades earlier, intended to permit the routine release of presentence reports to third parties while it had not provided the same to defendants themselves would be nothing short of "ironic." *Moore,* 949 F.2d at 71. Therefore, in the instant case, defendant is not entitled to his co-defendant's presentence report under the Jencks Act. The non-applicability of the Jencks Act to the disclosure of presentence reports to third parties is not entirely dispositive of defendant's request.

### B. Charmer Standard

In *United States v. Charmer Indus. Inc.,* 711 F.2d 1164 (2d Cir.1983), the Second Circuit examined the disclosure of presentence reports to defendants and third parties. The Second Circuit focused on Fed.R.Crim.P. 32(c), which requires, upon request, the district court to permit defendant or his counsel to review the presentence report. *See Charmer,* 711 F.2d at 1171. The Second Circuit noted, however, Rule 32(c)'s silence as to "whether and under what circumstances ... [presentence] reports may be disclosed to 'third persons.'" *Id.* 711 F.2d at 1172. Nonetheless, the Second Circuit inferred from Rule 32(c)'s language and legislative history that courts should not routinely make presentence reports available to third parties. *See Id.* Because Rule 32(c) did not on its face reach the question of disclosure to third parties, the Second Circuit crafted a standard by which it sought to balance the "desirability of confidentiality against the need of the moving party for disclosure of

the [presentence reports]." *Charmer*, 711 F.2d at 1173. It concluded that district courts should not authorize the disclosure of a presentence report to a third person unless such person can demonstrate that disclosure is required to meet the ends of justice. *See Id.* 711 F.2d at 1176.

■ The Second Circuit further explained the *Charmer* standard in its decision in *Moore* (citation omitted). It directed that "when a co-defendant requests a presentence report of an accomplice witness, the district court should examine the report in camera to determine if there are any statements made by the witness that contain exculpatory or impeachment material." *Moore*, 949 F.2d at 72. If the judge finds any such material, then its release is conditioned by the judge's finding of a compelling need for disclosure to meet the ends of justice. *See Id.* Prior to reaching its conclusion in *Charmer*, the Second Circuit discussed the burden that third-party requests must meet to demonstrate compelling need. To illustrate the burden, the Second Circuit drew a comparison between the compelling need standard of presentence reports and the compelling need standard required for the release of grand jury materials as set forth in *Illinois v. Abbott & Associates*, 460 U.S. 557, 103 S.Ct. 1356, 1361, n. 14, 75 L.Ed.2d 281 (1983); *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 n. 8, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979); and, *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). Under the grand jury standard, the movant must make a particularized showing of compelling need beyond proof of mere relevance, economy or efficiency.[2] *Charmer*, 711 F.2d at 1174. In addition, the Second Circuit indicated

that slight variations between a co-defendant's testimony and statements contained in that co-defendant's presentence report do not amount to the type of compelling need sufficient to defeat the overriding interest in maintaining the presentence report's confidentiality. *See Moore*, 949 F.2d at 72. *Charmer* also relied upon the standard set forth in *United States v. Cyphers*, 553 F.2d 1064 (7th Cir.1977) which denied disclosure of a presentence report where the movant had failed to show that the report was "absolutely essential to effective presentation of a defense." *Charmer*, 711 F.2d at 1174 (quoting *Cyphers*, 553 F.2d at 1069). The Second Circuit quoted with approval this same language in its two subsequent opinions addressing disclosure of presentence reports to third parties. *See Moore*, 949 F.2d at 72; *United States v. Pena*, 227 F.3d 23, 27 (2000).

The Second Circuit recently examined a district court's denial of a defendant's motion seeking the release of *pretrial* service materials. In *United States v. Pena*, the Second Circuit held that the "same standards and procedures set forth in *Moore* (citation omitted), to accommodate confidentiality concerns associated with a defendant's request for disclosure of exculpatory or impeachment information in the presentence report of a government witness apply to a similar request for such information in pretrial services materials." *Id.* 227 F.3d at 24. The Second Circuit continues to rely on the standards set forth in *Moore* when determining whether disclosure of presentence reports to third parties is appropriate.

For its part, the United States Supreme Court has not directly addressed this issue, only noting in dictum the rarity with

---

**2.** In addition, *Moore* noted that although *Charmer* was a civil case, courts are to apply the same standard in criminal cases, the only

difference being that what constitutes a compelling need will of course differ in the criminal context. *Id.* 949 F.2d at 72.

which courts have granted third parties access to presentence reports. *See United States Dep't of Justice v. Julian*, 486 U.S. 1, 12, 108 S.Ct. 1606, 1613, 100 L.Ed.2d 1 (1988) (addressing whether a presentence report is privileged from disclosure to the report's subject under the Freedom of Information Act). The Supreme Court observed that the courts' reluctance in such matters was due, at least in part, to the fear that disclosure of the reports would have a chilling effect on the willingness of various individuals to freely contribute information for possible inclusion in presentence reports. In addition, the Supreme Court recognized the importance of maintaining presentence reports' confidentiality. *See Julian*, 486 U.S. at 12, 108 S.Ct. at 1613. While not binding, the Supreme Court's discussion carries substantial weight, especially given its consistency with the Second Circuit's holdings.

*C. In Camera Review*

 Upon reviewing co-defendant Cireno's presentence report in camera under the aforementioned standards, it is the opinion of the court that it contains no exculpatory or impeachment material beyond that which defendant's counsel already brought to the court's attention during his cross-examination of Cireno. Therefore, defendant's motion for the release of co-defendant Cireno's presentence report is DENIED.

*D. Sentencing Date*

The court, not having previously set a date for sentencing, directs defendant to appear before it on Thursday, October 17, 2002, at 2:00 p.m. in Syracuse, New York for sentencing.

### CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED,** that defendant's motion for an order pursuant to the Jencks Act 18 U.S.C. 3500, granting the release of co-defendant Cireno's presentence report is **DENIED.** It is further

**ORDERED**, that defendant is directed to appear before the court on Thursday, October 17, 2002, in Syracuse, New York for sentencing.

**IT IS SO ORDERED.**