# State of Vermont v. Richard Densmore

[624 A.2d 1138]

No. 91-434

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 12, 1993

*Philip H. White* and *Susan L. Stitely* of *Wilson & White, P.C.*, Montpelier, for Appellant-Intervenor.

*E.M. Allen*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellee.

**Gibson, J.** Intervenor Caledonian-Record Publishing Co. appeals from a district court order denying its motion for access to a psychosexual evaluation of a criminal defendant submitted to the court for consideration in sentencing. Intervenor claims that the court violated its First Amendment right of access to criminal proceedings by sealing the document without making specific findings indicating that alternatives to closure were inadequate to protect the compelling interests at stake. We agree and reverse.

Defendant Richard Densmore was charged with four counts of lewd and lascivious conduct and one count of sexual assault. Following negotiations, he agreed to plead nolo contendere to three counts of lewd and lascivious conduct, and the State agreed to dismiss the other charges. The State also agreed to recommend three consecutive sentences of one to five years, all suspended except for twenty days on each charge. Defendant, joined by the state's attorney, submitted a psychosexual evaluation to the court in support of the plea agreement; they requested that the court consider the evaluation in lieu of a presentence report and that the evaluation remain confidential. Intervenor objected to sealing the evaluation. The court noted the objection.

After reviewing the evaluation, the court rejected the proposed plea agreement, and defendant withdrew the evaluation.

The court then indicated that it would be willing to accept a plea if the time served were increased from twenty to thirty days on each charge. Defendant agreed and proceeded to sentencing.

After sentencing, intervenor was heard briefly on its objection to the sealing of the evaluation. The court ordered defense counsel to maintain the document under seal until further order. Thereafter, intervenor formally moved to intervene and for access to the evaluation on the ground that it had been considered by the court in determining defendant's sentence. Following a full hearing, the court concluded that the press and the public have a qualified First Amendment and common-law right of access to documents filed with the court in connection with sentencing proceedings. It concluded, however, that compelling privacy interests outweighed disclosure of the contents of the document to the press and public and that no lesser remedy than continued sealing of the document was available to protect these interests. Intervenor appeals from this decision.

■ ■ The United States Supreme Court has developed a two-step analysis in determining the public right of access to preliminary criminal proceedings under the First Amendment. See *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 13–14 (1986) (*Press-Enterprise II*). First, the trial court must determine whether the First Amendment right of access extends to the judicial proceeding or document at issue. *Id.* at 13. Second, if the court finds that such a right of access attaches, then it must determine whether nondisclosure "is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 13–14.

We applied the *Press-Enterprise* analysis in *State v. Tallman*, 148 Vt. 465, 537 A.2d 422 (1987), and on the first step held that, under the First Amendment, the press and public have a qualified right of access to affidavits of probable cause and pretrial suppression hearings. *Id.* at 472–73, 537 A.2d at 427. While the *Tallman* Court agreed on the result to the second step, it was split 2-to-2 on the proper standard to apply in determining whether closure was appropriate despite the right of access. Justice Hill's opinion concluded that the trial court erred by restricting access to the affidavits and parts of the hearings without first making specific findings demonstrating that "'there is a substantial probability that the defendant's right to

a fair trial will be prejudiced by publicity.'" *Id.* at 474, 537 A.2d at 428 (quoting *Press-Enterprise II*, 478 U.S. at 14). Chief Justice Allen concluded that "a party seeking to close a suppression hearing need only advance an overriding interest that is likely to be prejudiced." *Id.* at 476, 537 A.2d at 429.

The result in *Tallman* was reaffirmed in *Greenwood v. Wolchik*, 149 Vt. 441, 544 A.2d 1156 (1988), in which we held that the "mere possibility of prejudice" at trial due to publicity was insufficient to outweigh the First Amendment right of access to affidavits of probable cause. *Id.* at 445, 544 A.2d at 1158. Because the defendant did not even meet the lower standard, we did not need to decide which standard applied. In *State v. Schaefer*, 157 Vt. 339, 599 A.2d 337 (1991), the Court was again divided 2-to-2 on whether the *Press-Enterprise II* standard for closure applied.

The United States Supreme Court has not addressed the First Amendment right of access to plea hearings or sentencing proceedings, but other courts have applied the *Press-Enterprise* analysis to requests for access to such proceedings. See, e.g., *Washington Post v. Robinson*, 935 F.2d 282, 287–88 (D.C. Cir. 1991) (plea agreements); *United States v. Corbitt*, 879 F.2d 224, 228–30 (7th Cir. 1989) (sentencing); *In re Washington Post Co.*, 807 F.2d 383, 389–90 (4th Cir. 1986) (plea hearing and sentencing). Because no right to fair trial is at issue in these proceedings, the arguments in favor of the lower standard are less persuasive. We apply the *Press-Enterprise* analysis herein without deciding whether this standard is also applicable to closure of pretrial suppression hearings.

I.

In *Press-Enterprise II*, the United States Supreme Court determined that a qualified First Amendment right of access attaches when (1) the place and process have historically been open to the press and public, and (2) public access plays a significant, positive role in the functioning of the particular process in question. *Press-Enterprise II*, 478 U.S. at 8. Intervenor maintains that the press and public traditionally have had a right to attend sentencing hearings and that this right extends to documents submitted for the court's consideration during such proceedings.

Defendant does not dispute the historical right of access to sentencing hearings, see, e.g., *In re Washington Post*, 807 F.2d at 389 (First Amendment right of access of press and public extends to sentencing proceedings), but, rather, argues that the right of access does not attach to all documents submitted in connection with sentencing. Relying on *United States v. Corbitt*, 879 F.2d at 228–29, he contends that the public right of access to documents submitted at a sentencing hearing must be considered separately from the public right to attend the hearing itself. In *Corbitt*, the United States Court of Appeals for the Seventh Circuit found that presentence reports have historically been confidential and, therefore, held that no First Amendment right of access attaches to presentence reports. *Id.* Our own rules are designed to assure the confidentiality of presentence reports. See V.R.Cr.P. 32(c)(5). Defendant argues that the reasons underlying the traditional confidentiality of presentence reports are equally applicable to the psychological evaluation submitted in this case. Consequently, he contends that we should hold that the evaluation, although not part of a presentence report, is not subject to the First Amendment right of access.

We do not decide whether the First Amendment right of access attaches to presentence reports because the psychosexual evaluation submitted in this case was not part of, nor was it equivalent to, a presentence report. Unlike a presentence report, which is prepared by a probation officer at the request of the court, the psychological evaluation in this case was prepared by a psychologist at the request of defendant. Further, defendant reviewed the evaluation before deciding to submit it to the court in support of the plea agreement and the recommended sentence.[1] A defendant does not have such control over

---

[1] For the same reasons, we reject the arguments of amicus, the Vermont Psychological Association (VPA), which claims that if confidentiality is not assured, psychologists will be unable to conduct psychological evaluations for the purpose of sentencing and that disclosure would pose serious ethical problems for psychologists. We are not persuaded by VPA's arguments in the context of this case. Here, defendant reviewed an evaluation prepared by his expert and chose to submit it to the court. This situation presents no ethical problem for the psychologist, who has disclosed nothing to a third party.

the submission of a presentence report; consequently, the analysis set forth in *Corbitt* regarding the presentence report is not applicable in this case.

Even if we examine the historical right of access to a psychological evaluation independently from the right of access to sentencing proceedings, as in *Corbitt*, we find no support for defendant's contention that these evaluations have traditionally been confidential when submitted by the parties. The test is not whether this evaluation is similar to those typically submitted in a presentence report but, rather, whether psychological evaluations submitted by parties have traditionally been open to the press and public. Defendant presents no authority to show otherwise. Indeed, existing case law suggests that the contrary is true. See *In re Washington Post*, 807 F.2d at 390 (right of access applies to documents filed by the State in connection with sentencing hearing); *CBS, Inc. v. United States District Court*, 765 F.2d 823, 825 (9th Cir. 1985) (presumption that public and press have right of access to criminal proceedings and documents filed therein); *Sarasota Herald Tribune v. Holtzendorf*, 507 So. 2d 667, 668 (Fla. Dist. Ct. App. 1987) (psychological report, not part of presentence report, held to be within public domain unless it can be shown to be otherwise privileged). We conclude that a presumption of openness prevails and that documents submitted by the parties in sentencing hearings are subject to a qualified right of inspection by the public.

Public access to sentencing hearings, and to documents filed in connection therewith, plays an important role in the sentencing process. In *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984) (*Press-Enterprise I*), the United States Supreme Court explained the importance of the open trial in the administration of justice.

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Id.* at 508 (emphasis in original). This reasoning applies with even more force to proceedings conducted without a jury so as to "'safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.'" *Press-Enterprise II*, 478 U.S. at 12–13 (quoting *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968)); cf. *Greenwood*, 149 Vt. at 444, 544 A.2d at 1158 (public access to affidavits of probable cause is all the more important because of absence of citizen involvement, such as jury or grand jury). The presence of the public protects against coercion in obtaining a guilty plea and against arbitrary or disproportionate sentences. *In re Washington Post*, 807 F.2d at 389. Further, it contributes to public understanding of the criminal justice system and improves the quality of the system by subjecting it to "the cleansing effects of exposure and public accountability." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 587 (1976) (Brennan, J., concurring); accord *Greenwood*, 149 Vt. at 444, 544 A.2d at 1159.

The instant case in particular presents a compelling argument for openness at sentencing. Here, defendant was sentenced to serve a total of ninety days after pleading guilty to three charges of child sexual abuse. The evidence before the sentencing court included the psychosexual evaluation; two victim impact statements, one requesting the maximum punishment possible, both requesting imprisonment; and statements by two victims' advocates that three victims supported the plea agreement. The mother of one victim nonetheless thought one year of imprisonment was more appropriate. Another victim did not want defendant to have to serve any time. The only information concerning defendant and his background was contained in the psychological evaluation. This report essentially formed the basis for defendant's sentence. Without access to this information, the public cannot have a full understanding of the sentence or assurance that justice has been done. See *Press-Enterprise I*, 464 U.S. at 509 (open proceedings create public awareness that criminal justice system is functioning and offenders are being brought to account for their criminal conduct).

We hold, therefore, that a qualified First Amendment right of public access attaches to documents submitted by the parties in sentencing proceedings. This opinion should not be read to re-

move the privilege attached to presentence reports, see 28 V.S.A. § 204(d), an issue that is not before us.

## II.

■■ Although we recognize a First Amendment right of access to sentencing documents, this right is not absolute. See *Tallman*, 148 Vt. at 473, 537 A.2d at 427 (constitutional right of access to pretrial proceedings and affidavits of probable cause is not absolute). Access may be denied, however, only if a three-part test is satisfied.

> [C]riminal proceedings may be closed to the public without violating First Amendment rights only if (1) closure serves a compelling interest; (2) there is a "substantial probability" that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest.

*In re Washington Post*, 807 F.2d at 392 (citing *Press-Enterprise II*); see also *Robinson*, 935 F.2d at 290 (same test); cf. *State v. Schaefer*, 157 Vt. at 349, 599 A.2d at 343 (2-to-2 split over whether to adopt "substantial probability" test of *Press-Enterprise II*). Moreover, a decision to deny access cannot be based on conclusory statements but, rather, must be supported by specific factual findings. *Press-Enterprise II*, 478 U.S. at 13; *In re Washington Post*, 807 F.2d at 392; *CBS, Inc.*, 765 F.2d at 825.

Thus, initially, we examine what interests or rights might outweigh the right to access. In *Press-Enterprise I*, 464 U.S. at 510, and *Press-Enterprise II*, 478 U.S. at 14, the interest balanced against the First Amendment right was the defendant's Sixth Amendment right to a fair trial. Similarly, in *Tallman* and *Greenwood,* this Court considered the effect of pretrial publicity on a defendant's right to a fair trial. A defendant's interest in a fair trial is, of course, a compelling one. The question before us is whether any of the interests asserted in this case is compelling enough to outweigh a qualified First Amendment right of access.

■ Defendant argues that several compelling interests outweigh the constitutional right of access here and require sealing the psychosexual evaluation. First, defendant argues that the

privacy interests of victims and third parties should be protected by sealing the document. We do not decide whether a defendant may assert the interests of victims under these circumstances because in this case intervenor does not object to redacting names and identifying information of victims and other third parties if the evaluation is disclosed. Nevertheless, we note that the privacy interests of innocent third parties may well present a compelling interest sufficient to outweigh a qualified First Amendment right of access under certain circumstances. See *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (privacy interests of innocent third parties outweigh First Amendment right of access, requiring redaction of names or portions of documents); cf. *Press-Enterprise I*, 464 U.S. at 511–12 (privacy interest of prospective juror may be compelling enough to warrant limited closure when interrogation touches on deeply personal matters).

Second, defendant claims that his privacy interest outweighs intervenor's First Amendment right of access to the evaluation. The trial court agreed, adding that the therapeutic value of the evaluation would be thwarted if the document were revealed to the press and the public. Intervenor points out, however, that the evaluation was not conducted for therapeutic purposes and that defendant's privacy interest regarding the evaluation was sufficiently protected because he reviewed it before choosing to present it to the court. We agree. Once defendant submitted the document to the court, the qualified First Amendment right of access attached.

Third, defendant argues, and the trial court concluded, that disclosure would have a chilling effect on the willingness of defendants, victims, and affected families to participate in psychosexual evaluations. We first note that the trial court made no findings to support this conclusion. Although some courts have found that disclosure of presentence reports to third parties may adversely affect the court's ability to obtain information, see Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv. L. Rev. 1613, 1684 (1980), and cases cited therein, the assumptions on which this assertion is based are not present in the instant case. Here, defendant hired the

expert to conduct the evaluation, and presented it to the court in an effort to persuade it to accept the plea agreement and suspend most of his sentence. Speculation that defendant would be reluctant to participate in a psychosexual evaluation to support his case for a suspended sentence is insufficient to outweigh a qualified constitutional right of access to documents filed in a sentencing proceeding. Moreover, the threat that disclosure of the report might have a chilling effect on third persons is dispelled in this case because intervenor has agreed that names and identifying information may be redacted.[2]

Although the privacy rights of victims may be sufficient to require redaction of portions of the document, defendant has presented no compelling interest that could support wholesale closure as ordered by the trial court. Moreover, the court did not make specific factual findings showing that, in the absence of closure, there would be a substantial probability of harm to a compelling interest. See *In re New York Times*, 828 F.2d at 116 (remanded to trial court for more specific findings to show whether sealing in whole or part was necessary to serve higher values). Nor did the court make the necessary findings to demonstrate that no alternative to closure could adequately protect the privacy interests of victims and other third parties. See *Press-Enterprise II*, 478 U.S. at 13.

*Vacated and remanded to district court for more specific findings. If the findings support redaction of the names and other identifying information of victims and third parties, the court shall redact this information before disclosing the evaluation. If the court is unable to protect a compelling privacy interest of victims and third persons by redacting portions of the evaluation, the court shall make specific findings indicating why this alternative to wholesale closure is not feasible.*

---

[2] The trial court recognized other compelling interests that we do not address because they were not addressed by the parties on appeal.