**UNITED STATES of America,**

v.

**Albert LAWRENCE, Defendant.**

**In re Capital Newspapers, Division of the Hearst Corporation, Intervenor.**

**No. 1:99CR326 (FJS)(DRH).**

United States District Court, N.D. New York.

Aug. 7, 2001.

Office of the United States Attorney, James T. Foley, United States Courthouse, Albany, New York, O'Connell and Aronowitz, Albany, New York, for defendant, of counsel, William C. Pericak, Michael L. Koenig.

McNamee, Lochner, Titus & Williams, P.C., Albany, New York, for intervenor, Michael J. Grygiel, of counsel.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

On June 8, 2000, a jury convicted Defendant, Albert Lawrence, of all twenty counts for which he was indicted.[1] Thereafter, the Court sentenced Defendant to thirty-seven months on each of those counts to run concurrently. In doing so, the Court referenced the significant number of letters it had received from a variety of individuals expressing their opinions about Defendant and the appropriate punishment in this case. Presently, Capital Newspapers Division of The Hearst Corporation, publisher of the Albany Times Union ("Times Union"), moves for an order to show cause for the limited purpose of obtaining immediate access, for the press and the public, to those letters the Court reviewed in sentencing Defendant. Times Union argues that access is warranted based on both the First Amendment and the common law presumption of access. Defendant opposes the motion. The Court heard oral argument in support of, and in opposition to, this motion on April 6, 2001. The following constitutes the Court's decision with respect to the motion.

### II. DISCUSSION

■ For purposes of this motion, the letters to which Times Union seeks access can be divided into two groups—those that were filed with the Clerk of the Court, including but not limited to, those letters

attached to or explicitly referenced in Defendant's sentencing memorandum or other submissions to the Court, and those that were sent directly to the Court. There is no dispute that the first group is part of the public record to which Times Union, upon request, is entitled to access.[2]

### A. First Amendment right of access

■ The United States Supreme Court has clearly held that the public enjoys a qualified First Amendment right of access to criminal proceedings. *See Matter of New York Times Co.*, 828 F.2d 110, 113 (2d Cir.1987) (citing *Press–Enterprise Co. v. Superior Court*, —— U.S. ——, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("*Press–Enterprise II* ")). In accordance with *Press–Enterprise II*, the Second Circuit has concluded that a qualified First Amendment right of access extends to "documents submitted in connection with judicial proceedings that themselves implicate the right of access." *Id.* at 114 (citations omitted). Likewise, the Ninth Circuit has stated that it can find "no principled basis for affording greater confidentiality to post-trial documents and proceedings than is given to pretrial matters." *CBS, Inc. v. United States Dist. Ct. for Cent. Dist. of Cal.*, 765 F.2d 823, 825 (9th Cir.1985) (citation omitted).

■ The right of access is, of course, not absolute. *See Biaggi*, 828 F.2d at 116. Rather it is a flexible concept which allows the district court discretion to deny access. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 602–03, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). In order to

---

1. The counts included three counts of wire fraud in violation of 18 U.S.C. §§ 1343, 1346; eight counts of mail fraud in violation of 18 U.S.C. §§ 1341, 1346; five counts of embezzlement in violation of 18 U.S.C. § 1033(b)(1)(A); two counts of failure to pay taxes in violation of 26 U.S.C. § 7202; and

two counts of theft or embezzlement from an employee benefit plan in violation of 18 U.S.C. §§ 664 and 2.

2. This is true of *any* document filed with the Clerk of the Court in any matter before the Court (other than those filed under seal).

determine whether the First Amendment right to access applies in a particular case, a court must undertake a two-step analysis. "First, the trial court must determine whether the First Amendment right of access extends to the judicial ... document[s] at issue.... Second, if the court finds that such a right of access attaches, then it must determine whether nondisclosure 'is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Vermont v. Densmore,* 160 Vt. 131, 133, 624 A.2d 1138 (1993) (internal quotation and quotation omitted).

The Supreme Court has stated that a right of access attaches when the process has historically been open to the public *and* that access plays a significant, positive role in the functioning of the particular process in question. *See Press–Enterprise II,* 478 U.S. at 8, 106 S.Ct. 2735. This test has been referred to as the "experience and logic" test. *See, e.g., United States v. Corbitt,* 879 F.2d 224, 228 (7th Cir.1989).

■ Applying this test, several circuit courts have held that presentence reports, due to their confidential nature, are not subject to the First Amendment right of access. *See, e.g., id.* at 237; *see also CBS,* 765 F.2d at 826. In fact, the Second Circuit has held, with no mention of the First Amendment, that presentence reports are not public documents and, therefore, courts have no obligation to disclose them.[3] *See United States v. Charmer Indus., Inc.,* 711 F.2d 1164, 1171 (2d Cir.1983). The *Charmer* court noted that "'requiring disclosure of a presentence report is contrary

to the public interest as it may adversely affect the sentencing court's ability to obtain data on a confidential basis from the accused, and from sources independent of the accused, for use in the sentencing process.'" *Charmer,* 711 F.2d at 1171 (quoting [*United States v. Martinello,*] 556 F.2d [1215,] 1216 [ (5th Cir.1977) ] ). Thus, the court concluded that a district court should not disclose a presentence report absent "a compelling demonstration that disclosure of the report is required to meet the ends of justice." *Id.* at 1175.

While the status of presentence reports as non-public documents is well-established, the status of letters sent directly to the court is unclear. However, at least one court in this Circuit has treated letters submitted on behalf of a defendant as warranting the same treatment as presentence reports. *See United States v. Boesky,* 674 F.Supp. 1128, 1128–30 (S.D.N.Y.1987).[4] In *Boesky,* the court found that letters regarding the defendant submitted directly to the court were intended to be confidential by their text. *See id.* at 1129. Thus, the court denied access to the letters after balancing the interests of the parties, finding that disclosing the report and letters would "undermine the integrity of the fact-gathering procedure involved in preparing presentence reports." *Id.* at 1130. The court also noted that the lack of access to the letters would not impact the public's interest in being "thoroughly informed" since the sentencing hearing was open and a transcript of the proceeding was available.[5] *See id.*

---

**3.** In deciding whether to disclose a particular document, the court ought "to balance the desirability of confidentiality against the need of the moving party for disclosure of th[at] document." *Charmer,* 711 F.2d at 1173.

**4.** *But see Sarasota Herald Tribune v. Holtzendorf,* 507 So.2d 667, 668 (Fla.App.1987) (declining "to extend the confidentiality afforded

presentence reports to materials, although of a similar nature, that are not part of the report ...").

**5.** In *Boesky,* Judge Lasker, in discussing the appropriate legal standard for determining whether to disclose the letters, concluded that the decision in *Biaggi* did not qualify the decision in *Charmer,* or for that matter even

The Court finds the reasoning of *Boesky* persuasive. While the sentencing process has traditionally been open to the public, the documents involved in that process have not, and in the Second Circuit are not, traditionally available to the public.[6] *See Charmer*, 711 F.2d at 1175. The letters submitted by private citizens directly to the Court clearly evinced an expectation of privacy and confidentiality.[7] If letters such as these were routinely disclosed and made part of the public record, it may have a chilling effect and discourage the valuable input as to the character of the defendant and other relevant sentencing concerns that would be garnered from the community during the sentencing process. Thus, the rationales for keeping presentence reports confidential are equally applicable here.[8] The privacy expectations of citizens and the benefit of honest, uninhibited commentary on sentencing issues far outweigh the need for public access to these letters. Moreover, in imposing sentence in this case, the Court did not rely on the specific contents of any particular letter.[9] Rather, as noted at the sentencing hearing, the Court was impressed by the sheer quantity of letters supporting Defendant. Thus, the Court concludes that, after balancing the interests of the parties, there is no need to violate the writers' legitimate expectation of confidentiality when the media and the public were thoroughly informed at the sentencing hearing of the nature and quantity of the letters. Therefore, the Court finds that the First Amendment right of access does not attach to the letters that were sent directly to the Court. Accordingly, the Court denies Times Union's motion to compel disclosure of those letters on that basis.

## B. Common law right of access

■■■■ The common law right of access, which predates the Constitution, applies to judicial records. *See, e.g., United States v. El–Sayegh*, 131 F.3d 158, 161 (D.C.Cir.1997). Of course, while the pre-

apply to presentence reports. *See Boesky*, 674 F.Supp. at 1129. Nonetheless, because of the public interest in that case, Judge Lasker also applied the *Biaggi* test and concluded that, in any event, disclosure of the report or any part of it was not necessary to meet the ends of justice. *See id.* at 1130.

**6.** Recently, albeit in an unpublished decision, the Second Circuit reiterated that in order for a third party to gain access to a presentence report one must show a compelling need. *See United States v. Pieschacon*, No. 96–1388, 1997 WL 183772, *1 (2d Cir. Mar.14, 1997).

**7.** Moreover, similar to grand jury material, these letters contain unsubstantiated opinions and expressions as to the character of Defendant and others and, in some instances, could contain damaging, and possibly untrue, allegations and statements that are not subject to cross-examination. *See Charmer*, 711 F.2d at 1175.

**8.** The Supreme Court of Vermont's opinion in *Vermont v. Densmore* is not to the contrary.

In that case, the court held that a psychosexual evaluation submitted during sentencing by a defendant was not analogous to a presentence report and, therefore, part of the public record. *See Densmore*, 160 Vt. at 135–36, 624 A.2d 1138. The court focused on the defendant's control over the evaluation and his review of the evaluation prior to its submission as opposed to the defendant's lack of control over a presentence report. *See id.* Moreover, the Vermont Supreme Court seemed to limit its holding, to allow public access to materials submitted in relation to sentencing, only to "documents *submitted by the parties* in sentencing proceedings." *Id.* at 136, 624 A.2d 1138 (emphasis added). In the instant case, Defendant Lawrence did not have control over the letters sent directly to the Court. Although, it is true that Defendant Lawrence may have urged people to write letters on his behalf, that does not mean that others, with perhaps negative comments to make, were not free to write letters as well.

**9.** That is, with the exception of the letter the Court discussed at sentencing.

sumption of access is strong, "the fact that a document is a judicial record does not mean that access to it cannot be restricted." *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir.1995) (*"Amodeo I"*). The decision whether to allow such access is within the discretion of the trial court. *See id.; see also United States v. Schlette*, 842 F.2d 1574, 1581 (9th Cir.1988) (citation omitted) (recognizing that decision whether to disclose judicial documents is one of judicial discretion). Trial courts are instructed, however, that the weight given the presumption of access is governed by how pivotal the document in question was to the exercise of Article III power. *See United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir.1995) (*"Amodeo II"*). Indeed, the presumption of access is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.*

In the present case, the specific contents of the letters sent directly to the Court did not play a significant role in the exercise of this Court's judicial power. Thus, the contents of those letters are of no value to the media and the public in their monitoring of this Court's functions.[10] Accordingly, the Court denies Times Union's motion with regard to the letters sent directly to the Court on that basis.

### III. CONCLUSION

After carefully reviewing the file, the parties' submissions and oral arguments and the relevant law, and for the reasons stated herein and at oral argument, it is hereby

**ORDERED** that Intervenor's motion is **DENIED** with respect to the letters sub-

mitted directly to the Court and **GRANTED** as to any letters filed with the Clerk of the Court.

**IT IS SO ORDERED.**

---

10. Nonetheless, with respect to the one letter from which the Court quoted at the sentencing hearing, the Court will make that letter available to Times Union after redacting the letter to protect the identity of the writer.