VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-00159

Kerrie Johnson v. Christopher Winters et al

## Opinion and Order on the State's Motion to Dismiss and Ms. Johnson's Motion to Strike and Seal

This case arises out of complaints by Plaintiff Ms. Kerrie Johnson (and potentially others) of alleged abuse of her children by their father (her now ex-husband) to Defendant the Department for Children and Families (DCF). The complaints resulted in investigations or assessments, but no abuse complaint ever was substantiated. Due to Ms. Johnson's prior employment with DCF (and potentially additional reasons), to avoid conflicts, the investigations and assessments were undertaken by DCF's Residential Licensing and Special Investigations Unit or the Adult Protective Services Division of Defendant the Department of Aging and Independent Living (DAIL).[1] Ms. Johnson has repeatedly requested that DCF disclose to her the relevant "redacted investigation files" pursuant to 33 V.S.A. § 4921(c)(1) (parental right to redacted investigation files), but the production has largely been refused. She claims that DCF also has refused to produce, in violation of 33 V.S.A. § 4921(d)(6), records involving her children that were requested by the Office of the Child, Youth, and Family Advocate (OCYFA). Ms. Johnson asks the

---

[1] The named defendants are the Commissioners DCF and DAIL, who have been sued in their official capacity only. "In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the [governmental entity] itself." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (citations omitted. Accordingly, the Court refers to the Defendants as DCF and DAIL when context requires and, collectively, the State.

Court to order the State to disclose the requested records to her (Claim 1) and to issue a declaratory ruling as to OCFYA's right to the records it requested (Claim 2).[2]

The State has filed a motion to dismiss for lack of subject-matter jurisdiction, Vt. R. Civ. P. 12(b)(1), and—at least nominally—for failure to state a claim, Vt. R. Civ. P. 12(b)(6). It argues that Ms. Johnson's claim of right to the redacted records (Claim 1) fails on the merits and that the Court lacks subject-matter jurisdiction as a result. It also argues that Ms. Johnson lacks standing to bring her claim regarding OCFYA's right to records (Claim 2). A motion seeking dismissal for lack of standing is considered under Rule 12(b)(1), which addresses subject-matter jurisdiction. 5B Arthur R. Miller and A. Benjamin Spencer, *Fed. Prac. & Proc. Civ.* § 1350 (4th ed.). The State nowhere specifies what part of its motion it believes is subject to Rule 12(b)(6) rather than Rule 12(b)(1), however.

The State submitted numerous documents in support of its dismissal motion, likely indicating its belief that it is proper to do so when subject-matter jurisdiction is at issue. Those records are relevant *only* to its argument seeking the dismissal of Claim 1; they are irrelevant to its Claim 2 standing argument. In response, Ms. Johnson filed a motion to "strike and seal" two of those exhibits, arguing that they are confidential by statute, unnecessarily reveal her children's private medical information, and reveal her contacts with DCF or DAIL during abuse investigations. The State did not oppose sealing those exhibits but has opposed striking them based on its understanding of the relevant statutes. The Court temporarily sealed the two exhibits pending additional

---

[2] Ms. Johnson did not separate her claims into separate counts. For ease of reference, the Court refers to them as Claims 1 and 2.

briefing, in the course of which Ms. Johnson extended her request to include all exhibits submitted by the State with its dismissal motion.

I.      The State's Motion to Dismiss

A.      Framing Claim 1

Ms. Johnson's complaint is unclear as to the legal basis for either of the claims asserted, but she states that she is bringing them pursuant to Rules 57 (declaratory judgment), 65 (injunctions), and 75 (review of governmental action). Rules 57, 65, and 75 are procedures; they are not substantive claims on their own. Rules 57 and 65 apply to relief only and indicate nothing about what substantive claim might lead to such relief. Rule 75, on the other hand, is the procedure that applies to certain claims, usually those seeking review in the nature of *certiorari, mandamus, or prohibition*. Reporter's Notes— Vt. R. Civ. P. 75.

There is no statutory right to appeal the denial of the records that Ms. Johnson requested, and review in the nature of certiorari and prohibition makes no sense in this context. The State thus reasons that Ms. Johnson's Claim 1 seeks review in the nature of mandamus. *See Ahern v. Mackey*, 2007 VT 27, ¶ 8, 181 Vt. 599, 602 ("The purpose of mandamus is generally to require a public official or body to perform a simple ministerial duty imposed by law, although it may be available to enforce even discretionary duties '[w]here there appears, in some form, an arbitrary abuse of the power vested by law in an administrative officer . . . which amounts to a virtual refusal to act or to perform a duty imposed by law.'" (citation omitted)). Ms. Johnson does not dispute that contention. Accordingly, the Court concludes that Ms. Johnson's Claim 1 seeks mandamus review.

B.     Rule 12(b)(1) vs. Rule 12(b)(6)

As noted, the State submitted substantial extrinsic evidence with its motion to demonstrate that Ms. Johnson's Claim 1 lacks merit.  "A court may consider evidence outside the pleadings in resolving a motion to dismiss for lack of subject-matter jurisdiction [under Rule 12)(b)(1)]." *Conley v. Crisafulli*, 2010 VT 38, ¶ 3, 188 Vt. 11, 14. Generally, with limited exceptions not relevant here, a Court *may not* consider evidence outside the four corners of the complaint (and any attachments to it) on a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See Nash v. Coxon*, 152 Vt. 313, 314–15 (1989) ("[I]f matters outside the pleadings are presented and not excluded by the court, the motion to dismiss must be treated as one for summary judgment." (internal quotation and citation omitted)).

Rule 12(b)(1) plainly applies to the State's standing argument.  The extrinsic evidence that the State submitted, however, appears only tangentially relevant to that part of its motion.  Otherwise, the State's contention that the lack of merit as to Claim 1 negates the existence of the Court's subject-matter jurisdiction may well misapprehend the difference between a court's jurisdiction and a claim's merits.  As the U.S. Supreme Court definitively explained long ago:

> Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.  For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.  If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Bell v. Hood*, 327 U.S. 678, 682 (1946). In other words, jurisdiction and the merits are separate matters; the Court must have jurisdiction to reach the merits. Conversely, a showing that a claim lacks merit says nothing on its own about the Court's jurisdiction. A Court may have jurisdiction regardless that the claim lacks merit.

The Seventh Circuit Court of Appeals has explained exactly that in the context of a mandamus claim, as follows:

> [I]t is necessary to distinguish between the court's power to adjudicate the petition and the court's authority to grant relief. Only the former necessarily implicates the subject-matter jurisdiction of the court; the latter will depend on whether the statute on which the plaintiff is relying imposes a clear duty on the officer or employee of the United States [referring to the elements of a mandamus claim]. . . . The Tenth Circuit recognized as much in [a 1981 case], in which it said:
>
> > *In resolving whether [subject matter] jurisdiction is present, allegations of the complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction . . . .*
>
> . . .
>
> We agree with the [Sixth Circuit] that unless the claim is so frivolous that it [may be dismissed for that reason], the district court has [subject matter] jurisdiction . . . to determine whether the prerequisites for mandamus relief have been satisfied: does the plaintiff have a clear right to the relief sought; does the defendant have a duty to perform the act in question; and is there no other adequate remedy available. *A conclusion that any one of those prerequisites is missing should lead the district court to deny the petition, not because it now realizes that it had no power to be thinking about the case in the first place, but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief.*

*Ahmed v. Department of Homeland Security*, 328 F.3d 383, 387–87 (7th Cir. 2003) (emphasis added, citations omitted).

Regarding Claim 1, then, the State has likely confused subject-matter jurisdiction with the merits. The contention that the Court lacks subject-matter jurisdiction *because*

the claim fails on the merits is best viewed as a Rule 12(b)(6) claim. Framed properly, the State's dismissal argument is more akin to a contention that Ms. Johnson has failed to state a claim for relief. Such an argument falls under Rule 12(b)(6), and the record is limited to the four corners of the complaint and the attachments to it.

Nonetheless, our Supreme Court has not spoken on the issue and has sometimes used language suggesting that such claims present a jurisdictional question. *See Maple Run Unified Sch. Dist. v. Vermont Hum. Rts. Comm'n*, 2023 VT 63, ¶ 19, 218 Vt. 496, 506. Since the Court's ruling here would be the same even if it considered the attached documents, the Court declines to rule in this matter as to whether the State's motion is properly seen as a jurisdictional one. *See also* 5B Charles Wright, *et al., Fed. Prac. & Proc. Civ.* § 1350 ("[If a factual attack [in a motion to dismiss for lack of subject-matter jurisdiction] implicates an element of the claim, the court should find that jurisdiction exists and treat the objection as a direct attack on the merits of the plaintiff's case.").

C.     Analysis of Claim 1

Ms. Johnson claims a right to disclosure of the requested, and otherwise confidential, "redacted investigation files" pursuant to 33 V.S.A. § 4921(c)(1). That subsection provides:

> (c) Disclosure of redacted investigation files. Upon request, the redacted investigation file shall be disclosed to:
>
>> (1) the child's parents, foster parent, or guardian, absent good cause shown by the Department, provided that the child's parent, foster parent, or guardian is not the subject of the investigation.

Ms. Johnson is the child's parent, and she alleges that she has never been the subject of any investigation. She therefore has a clear statutory right to the requested records "absent good cause shown" by DCF.

The State argues that this statute gives it discretion to determine whether there is good cause to not disclose the records and, as a matter of law, mandamus review cannot be not available to evaluate any such decision.[3] Such a contention runs head on into the standards governing Rule 12(b)(6) motions.

"'A motion to dismiss . . . is not favored and rarely granted.' This is especially true 'when the asserted theory of liability is novel or extreme,' as such cases 'should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations.'" *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 316–17 (citations omitted). "Dismissal under Rule 12(b)(6) is proper only when it is beyond doubt that there exist no facts or circumstances consistent with the complaint that would entitle Plaintiff to relief." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 576 (mem.) (citing *Union Mut. Fire Ins. Co. v. Joerg*, 2003 VT 27, ¶ 4, 175 Vt. 196, 198)). In considering a motion to dismiss, the Court "assume[s] that all factual allegations pleaded in the complaint are true, accept[s] as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume[s] that all contravening assertions in defendant's pleadings are false." *Mahoney v. Tara, LLC*, 2011 VT 3, ¶ 7, 189 Vt. 557, 558–59 (mem.) (internal quotation, brackets, and ellipses omitted). Courts, however, are not required to accept "'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Rodrigue v. Illuzzi*, 2022 VT 9, ¶ 33, 216 Vt. 308, 326 (quoting *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1, 10 (quotation omitted).

---

[3] As the State frames it, DCF would appear to have entirely unfettered discretion to deny records requests regardless whether the decision is supported by good cause.

The Court declines to opine definitively on the State's argument at this time. While Ms. Johnson attached numerous documents to her complaint, and those documents to some extent reflect the back and forth between her and the State as to why the records have not been produced, and the State has attached other documents, those documents do not present a clear enough picture for the Court to understand why, at present, the State refuses to produce the requested records. It also is apparent that the State sees things quite differently than Ms. Johnson does and has some conviction that there is good cause not to disclose the records. The allegations are simply insufficient for the Court to arrive at a ruling–as a matter of law–based on the current record.

More importantly, Ms. Johnson's truly is a novel claim. The statute surely gives her a right to the records absent good cause to the contrary. It also clearly gives DCF discretion to not reveal those records for "good cause shown." While the State's view that good cause equates to unfettered discretion may have some force, the fact that good cause must be "shown" by the State may well imply some actionable and reviewable burden. The lines among good cause and bad cause or arbitrariness in this context are difficult to draw and how such statutory language may fit into traditional mandamus review is murky, at best. The parties have not meaningfully explored these questions, and there is no Vermont caselaw materially addressing them in the context of this statute. Under Vermont's dismissal standard, the wiser course at present is to deny dismissal so that Ms. Johnson's claim may be "explored in the light of facts as developed by the evidence."

Accordingly, the State's motion as to Claim 1 is denied.

D.    Analysis of Claim 2

Ms. Johnson's claim 2 is that she filed a complaint with the OCFYA, the OCFYA sought relevant records from DCF, and DCF refused to provide any records despite the OCFYA's entitlement to them pursuant to 33 V.S.A. § 4921(d)(6). Ms. Johnson does not allege that the OCFYA has assented to her filing suit on its behalf, that she would have had any right to disclosure of records from the OCFYA had DCF disclosed them to the OCFYA, or that the OCFYA would have chosen to provide those records to her as a matter of its discretion had it obtained them. The State argues that Ms. Johnson lacks standing to bring this claim insofar as she has not, and cannot, assert any relevant injury in fact in these circumstances.

The OCFYA was established in 2022 "for the purpose of advancing the interests and welfare of Vermont's children and youths." 33 V.S.A. § 3202. Among its powers is the authority to "review complaints concerning the actions of [DCF] and of any entity that provides services to children." 33 V.S.A. § 3203(a)(3). "All State agencies shall comply with reasonable requests of the Child, Youth, and Family Advocate and Deputy Advocate for information and assistance." 33 V.S.A. § 3208; *see also* 33 V.S.A. § 4921(d)(6) (OCFYA access to DCF records). Any records produced are confidential, but the OCFYA has discretion to disclose them to anyone listed at 33 V.S.A. § 4921(e)(1) when it "reasonably believes that the health, safety, or welfare of a child or youth is at imminent risk." 33 V.S.A. § 3209(b). Ms. Johnson, as a parent, has a qualified right to receive records directly from DCF at 33 V.S.A. § 4921(c)(1), not § 4921(e)(1). Nothing in the OCFYA statutes entitles a parent or other complainant to *any* action by the OCFYA or to receive records in its possession.

"Standing doctrine is fundamentally rooted in respect for the separation of powers of the independent branches of government." *Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 341 (1997) (noting at 340–41 that "[o]ne of the 'passive virtues' of the standing doctrine is to promote judicial restraint by limiting the occasions for judicial intervention into the political process"). Standing "confin[es] the judiciary to the adjudication of actual disputes and prevent[s] the judiciary from presiding over broad-based policy questions that are properly resolved in the legislative arena." *Parker v. Town of Milton*, 169 Vt. 74, 77 (1998).

The contemporary federal doctrine was described in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), as follows:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560–61 (citations omitted). These are the constitutional (as opposed to prudential) limits on federal courts' jurisdiction.

The federal standing requirements have been adopted in Vermont. *Parker*, 169 Vt. at 77–78 (explaining that in *Hinesburg Sand & Gravel*, the Vermont Supreme Court adopted the standing test articulated in *Lujan*). Vermont courts are not, however, inflexibly bound by federal standing precedents insofar as standing in Vermont state court presents a legal question under the Vermont, rather than United States, constitution. *See Ferry v. City of Montpelier*, 2023 VT 4, ¶ 15, 217 Vt. 450, 461–62.

It is improper to reach the merits prior to determining standing. *See Arizona State Legislature v. Arizona Independent Redistricting Com'n*, 576 U.S. 787, 800 (2015) ("Although we conclude that the Arizona Legislature does not have the exclusive, constitutionally guarded role it asserts, one must not 'confus[e] weakness on the merits with absence of Article III standing.'" (citation omitted)); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982) ("The requirement of standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.'" (citation omitted)); *Committee on the Judiciary of the United States House of Representatives v. McGahn*, 968 F.3d 755, 762 (D.C. Cir. 2020) ("When determining whether a plaintiff has Article III standing, the court must assume that the [plaintiff] will prevail on the merits.").

"A plaintiff must allege facts sufficient to establish his or her standing '[o]n the face of the complaint.'" *Paige v. State*, 2018 VT 136, ¶ 10, 209 Vt. 379, 384 (citation omitted). The Court evaluates the motion to dismiss pursuant to those standards.

Here, Ms. Johnson cannot, for standing purposes, assert any injury-in-fact related to anything the OCFYA has done or not done, or any failure of DCF to cooperate with the OCFYA, for a straightforward reason: the OCFYA statutes give her no rights whatsoever related to the OCFYA. There is a prudential reason that she lacks standing as well: she is improperly attempting to assert the rights of a third party. *See Schievella v. Dep't of Taxes*, 171 Vt. 591, 592 (2000) (Parties generally "are prohibited from raising the rights of others."). The OCFYA is capable of advocating its interests on its own. It is its choice alone as to how or whether to assert claims in particular circumstances.

Claim 2 is dismissed for lack of standing.

II.      Ms. Johnson's Motion to Strike and to Seal

Two of the exhibits attached to the State's motion to dismiss were temporarily sealed pending further briefing on Ms. Johnson's motion to strike and to seal. In that further briefing, she requested that the motion extend to all exhibits attached to the State's motion.

There is no basis to "strike" anything, nor does Ms. Johnson point to any law that would support doing so. Authority to strike from the record principally appears at Vt. R. Civ. P. 12(f). That rule provides: "Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 21 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This authority extends to the *pleadings*. A motion is not a pleading and is not subject to Rule 12(f). *See CX Reinsurance Co. Ltd. v. Johnson*, 325 F.R.D. 132, 135 (D. Md. 2018) ("A motion for summary judgment is not a pleading and therefore is not susceptible to a motion to strike."); Vt. R. Civ. P. 7(a) ("There shall be a complaint and an answer; a disclosure under oath, if trustee process is used; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a

third-party answer."); 5 A. Benjamin Spencer, *Fed. Prac. & Proc. Civ.* § 1183 (4th ed.) (noting that a motion to dismiss is not a pleading). The request to strike is denied.[4]

Ms. Johnson's request to seal is properly considered under the Rules for Public Access to Court Records. The hallmark of an effective judicial system is transparency. As Justice Brandeis famously wrote: "Sunlight is said to be the best of disinfectants." Louis D. Brandeis, What Publicity Can Do, Harper's Weekly, Vol. 58 (Dec. 20, 1913). Consistent with that principle, the overarching guidance of the Vt. R. Pub. Acc. Ct. Rec. is that the "public has access to all judicial-branch case records, in accordance with the provisions of this rule, except as provided in Rule 6(b)." Vt. R. Pub. Acc. Ct. Rec. 6(a); *see also* Vt. R. Pub. Acc. Ct. Rec. 3(a) ("Except as provided in these rules or in statute, the public may inspect or copy all judicial-branch case and administrative records."). Rule 6(b) itemizes particular exemptions from access.

Rule 9 provides the procedure for limiting access to case records through a process of sealing. Potential bases for limiting access under Rule 9 are not limited to the exemptions at Rule 6(b). Rather, a party can support a requested redaction with reference to "any statute, administrative or court rule, court order or precedential decision providing for confidentiality with respect to the identified privacy interest(s)." Vt. R. Pub. Acc. Ct. Rec. 9(a)(3)(C); *see In re Sealed Documents*, 172 Vt. 152, 160 (2001) (noting common-law authority granted to courts to seal records). To determine whether to seal, the Court employs the rigorous standards described in *In re Sealed Documents*

---

[4] To the extent the Court has inherent authority to strike portions of motions, it apprehends no compelling basis to do so in this context.

and related case law. *See* Reporter's Notes (original and 2022 amendment), Vt. R. Pub. Acc. Ct. Rec. 9.

Any request to seal faces a high bar. The Court must find "by clear and convincing evidence, that good cause and exceptional circumstances exist for the restriction of public access." Vt. R. Pub. Acc. Ct. Rec. 9(a)(5). And any seal must be implemented in the "least restrictive" manner possible. Vt. R. Pub. Acc. Ct. Rec. 9(a)(5)(a). Those terms are further reinforced and defined by the strong constitutional right of access to court records set out in cases such as *State v. Densmore*, 160 Vt. 131, 133–35 (1993); *see also Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 13–14 (1986) (sealing must be "essential to preserve higher values and . . . narrowly tailored to serve that interest" (citation omitted)).

The parties have engaged in a spirited debate as to whether various statutes require the confidentiality of the information in the exhibits to the State's motion. The Court sees no need to rely on those statutes at this juncture. Sealing is appropriate for three predominating reasons. First, Ms. Johnson requests it, and the State does not oppose it. Second, the exhibits (as described above) are entirely irrelevant to the State's motion. The Court cannot even tell at this point whether the sort of information in them might ever have any relevance to this case. Third, it is wholly apparent that the exhibits contain deeply personal information about Ms. Johnson and her children in the context of abuse allegations. Few reasonable people would want such information to be made public, and there is no apparent, legitimate public interest in that information at this time. Indeed, the general confidentiality of relevant DCF records is to protect that important interest in privacy. Assuming for the sake of the argument that the statutes

providing for confidentiality do not apply so broadly as to encompass everything in the exhibits, Ms. Johnson's protest that she reasonably believed those communications were subject to confidentiality is palpable and uncontested.

For these reasons, the Court extends the seal to apply to all the exhibits attached to the State's dismissal motion.

Conclusion

For the foregoing reasons, the State's motion to dismiss is denied as to Claim 1 and granted as to Claim 2. Ms. Johnson's motion to strike and to seal is denied as to the request to strike and granted as to the request to seal.

(a)    The Court Clerk shall seal all the exhibits (A–H) to the State's March 24, 2025, motion to dismiss.

(b)    After conferring with Ms. Johnson, the State shall promptly refile all papers containing sealed information with that information redacted in publicly accessible versions.

(c)    Contemporaneously, the State shall notify the Court as to which papers were refiled with redactions. The originals then will be sealed.

Electronically signed on Friday, August 8, 2025, per V.R.E.F. 9(d).


_____
Timothy B. Tomasi
Superior Court Judge

| VERMONT SUPERIOR COURT | | CIVIL DIVISION |
|---|---|---|
| Washington Unit |  | Case No. 25-CV-00159 |
| 65 State Street | | |
| Montpelier VT 05602 | | |
| 802-828-2091 | | |
| www.vermontjudiciary.org | | |

### Kerrie Johnson v. Christopher Winters et al

## ENTRY REGARDING MOTION

Title:        Motion to Correct Clerical Errors (Motion: 6)

Filer:        Kerrie L. Johnson

Filed Date:   August 28, 2025

The motion is GRANTED.

Plaintiff's unopposed motion to correct the first two sentences of the Court's

August 19, 2025 Decision is **Granted.**[1]

The first two sentences are amended to read as follow:

This case arises out of complaints by Plaintiff Ms. Kerrie Johnson and others of alleged abuse of her children by their father (her now ex-husband) to Defendant the Department of Children and Families (DCF).  The complaints resulted in investigations or assessments and is alleged in one case to have been substantiated.

---

[1] The undersigned consulted with Judge Tomasi, the author of the underlying decision about this amendment, and Judge Tomasi concurred in the amendment.

The remainder of the decision remains as previously issued.

**So Ordered.**

Electronically signed on 9/18/2025 5:26 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge