Filed 03/25/25

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-03984

---

State of Vermont v. TikTok Inc.

---

## Opinion and Order on TikTok's Motion to Seal

After extensive pre-suit discovery via civil investigative demands, the State of Vermont filed the complaint in this case against TikTok, Inc., which operates a popular social media platform, claiming that it has violated Vermont's Consumer Protection Act (CPA), 9 V.S.A. §§ 2451–2494z, in several ways. Under the terms of a pre-suit confidentiality agreement, the State made numerous redactions to the complaint pending a motion to seal by TikTok. TikTok filed that motion on November 1, 2024. In alleges the following bases for continuing the existing seal: (a) to protect confidential business information or trade secrets, (b) to preserve the safety of its users or others, and (c) to preserve the privacy of its users or others. The parties have briefed the matter, and a hearing was held on February 27, 2025. The Court makes the following determinations.

I.      Procedural Background

When the 231-paragraph complaint was filed, the State had made redactions to 75 paragraphs under the confidentiality agreement. By the time of TikTok's November 1 motion, the State had agreed to redactions in 5 paragraphs to conceal the names or professional titles of certain people for whom there had been palpable safety concerns. The Court approved those redactions that day. Other than those redactions, the State

has argued against sealing anything else. Otherwise, at the time of its motion, TikTok was seeking redactions in only 34 of the paragraphs originally redacted by the State.

TikTok then withdrew its request as to certain paragraphs in its reply filing. *See* TikTok's Reply in Support of Seal at 1 n.1 (filed December 6, 2024). It withdrew its request as to still more paragraphs shortly before the February 27 hearing. *See* TikTok's Supplemental Brief at 2 (filed Feb. 21, 2025). Finally, TikTok indicated at the hearing that it no longer sought redactions in several more paragraphs. The parties stipulated to the withdrawal of those requests after the hearing. *See* Joint Supplemental Brief at 1 (filed March 4, 2025). Currently, other than the redactions that the Court ordered on November 1, redactions are requested in only 10 paragraphs: 3, 9, 15, 32, 33, 37, 49, 64, 96, and 104. The pending requests are documented in an appendix to the March 4 filing.

The Court understands the many withdrawals of requests for redactions to be principally because TikTok either discovered that certain information, in fact, is publicly available or information subject to proposed redactions here has been made publicly available in state court litigation elsewhere. Other redactions were originally agreed to by the parties after joint interactions. The Court very much appreciates the parties' collaborative efforts, their prompt attention to such matters, and the clear documentation of what is and is not sought to be sealed.

II.    Legal Standards

A.    Rules for Public Access to Court Records (Vt. R. Pub. Acc. Ct. Rec.)

The hallmark of an effective judicial system is transparency. As Justice Brandeis famously wrote: "Sunlight is said to be the best of disinfectants." Louis D. Brandeis, *What Publicity Can Do, Harper's Weekly*, Vol. 58 (Dec. 20, 1913). In accord with those

principles, the overarching guidance of the Vt. R. Pub. Acc. Ct. Rec. is that the "public has access to all judicial-branch case records, in accordance with the provisions of this rule, except as provided in Rule 6(b)." Vt. R. Pub. Acc. Ct. Rec. 6(a); *see also* Vt. R. Pub. Acc. Ct. Rec. 3(a) ("Except as provided in these rules or in statute, the public may inspect or copy all judicial-branch case and administrative records."). Rule 6(b) itemizes particular exemptions from access.

Rule 9 provides the procedure for limiting access to case records through a process of sealing. Potential bases for limiting access under Rule 9 are not limited to the exemptions at Rule 6(b). Rather, a party can support a requested redaction with reference to "any statute, administrative or court rule, court order or precedential decision providing for confidentiality with respect to the identified privacy interest(s)." Vt. R. Pub. Acc. Ct. Rec. 9(a)(3)(C); *see In re Sealed Documents*, 172 Vt. 152, 160 (2001) (noting common-law authority granted courts to seal records). To determine whether to seal, the Court employs the rigorous standards described in *In re Sealed Documents* and related case law. *See* Reporter's Notes (original and 2022 amendment), Vt. R. Pub. Acc. Ct. Rec. 9.

Any request to seal faces a high bar. The Court must find "by clear and convincing evidence, that good cause and exceptional circumstances exist for the restriction of public access." Vt. R. Pub. Acc. Ct. Rec. 9(a)(5). And any seal must be implemented in the "least restrictive" manner possible. Vt. R. Pub. Acc. Ct. Rec. 9(a)(5)(a). Those terms are further reinforced and defined by the strong constitutional right of access to court records set out in cases such as *State v. Densmore*, 160 Vt. 131, 133–35 (1993). *See also Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 13–14 (1986) (sealing must be "essential

to preserve higher values and . . . narrowly tailored to serve that interest" (citation omitted)).

Ultimately, such requests require careful balancing of the often substantial interests on both sides of the ledger. As noted in Rule 1: "These rules cover the complementary responsibilities to provide public access or special access to judicial-branch records and to protect the confidentiality of case information where such confidentiality is required by statute, rule, or court order. They must be liberally construed to implement these policies." Vt. R. Pub. Acc. Ct. Rec. 1.

B.    Trade Secrets

TikTok maintains, in part, that its requests to seal trade secrets, or confidential business information, fall under the exemption at Vt. R. Pub. Acc. Ct. Rec. 6(b)(16), which expressly applies to such information. There are no express exemptions for general concerns about privacy or safety.

The current trade secrets exemption, as amended in 2024, protects: "Trade secrets and other confidential business information, as defined in 1 V.S.A. § 317(c)(9) and 9 V.S.A. § 4601(3), and as required by 9 V.S.A. § 4605." These are references to the trade secrets exemption in the Access to Public Records Act (PRA), 1 V.S.A. § 315–320, and the definition of trade secret in the Trade Secrets Act (TSA), 9 V.S.A. §§ 4601–4609. So, if it is a trade secret under the PRA or TSA, it is exempt from public access under Vt. R. Pub. Acc. Ct. Rec. 6(b)(16).

The TSA defines a trade secret as follows:

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

9 V.S.A. § 4601(3).

PRA Exemption 9 protects, in relevant part:

Trade secrets, meaning confidential business records or information, including any formulae, plan, pattern, process, tool, mechanism, compound, procedure, production data, or compilation of information that is not patented, which a commercial concern makes efforts that are reasonable under the circumstances to keep secret, and which gives its user or owner an opportunity to obtain business advantage over competitors who do not know it or use it, except that the disclosures required by 18 V.S.A. § 4632 are not exempt under this subdivision.

1 V.S.A. § 317(c)(9).

The TSA definition and current PRA exemption use slightly different language, but both impose a functionally equivalent 2-prong inquiry. *See Long v. City of Burlington*, 2018 VT 103, ¶ 22 n.9, 208 Vt. 418, 428 (noting that the current PRA exemption is "consistent with the definition of 'trade secret' for purposes of Vermont's laws addressing the misappropriation of trade secrets").

III.    Analysis

As presented by the parties, there is no dispute that TikTok has kept the information in the remaining 10 paragraphs subject to redaction confidential. The dispute is whether the substance of that information is appropriate for sealing when balanced against the substantial public interest in transparency and the demanding standards of the Vt. R. Pub. Acc. Ct. Rec.

In that regard, the Court notes that TikTok supported its motion to seal with a single affidavit, that of Ms. Noreen Yeh, an "eDiscovery analyst at TikTok." Ms. Yeh's testimony is somewhat conclusory and unparticularized. She states:

> The redacted material TTI [TikTok] moves to seal generally falls into one of the following categories: (1) sensitive business information, such as usage and financial data, business strategy information, and personal information of employees; and (2) information that could be exploited by bad actors.

> The material in the first category includes competitively sensitive information like financial data . . .; internal user engagement data . . .; market saturation data . . .; and other internal data about the TikTok platform . . . .

> The material in the second category also includes business strategy information, including competitively sensitive information such as documents that reflect confidential analyses, discussions, and documents . . .; business partners . . .; the TikTok platform business model . . .; the data TTI decides to track . . .; internal studies . . .; the TikTok platform design . . .; and internal business operations . . . .

> Disclosure of these categories of information would potentially harm the TikTok platform's competitive position by allowing competing technology platforms to gain insight into the TikTok platform's financial and user activity results, as well as sensitive business strategy and information. These competitors could then use this information to alter their business strategies, reallocate resources, and emulate features that have been painstakingly developed for the TikTok platform.

> For these reasons, this information should remain confidential because TTI has a strong interest in preserving the confidentiality of competitively sensitive business information like internal financial and usage data or strategy information about the TikTok platform.

> .   .   .

> The material in the second category could be used by TikTok platform users or outside bad actors to attempt to exploit or circumvent the TikTok platform's safety and content moderation systems, processes, and policies, and in so doing would potentially endanger users and the public. This includes, for example, information about the design of safety measures for protecting users in specific demographic groups . . . .

Public disclosure of this information would undermine the effectiveness of the TikTok platform's safety and content-moderation systems, processes, and policies, and potentially endanger users and the public. TTI's interest in preventing disclosure of this information to prevent that risk of harm plainly outweighs what little public interest may exist, if any, in disclosure. Rather, the public's interest is aligned with TTI's in preventing disclosure. Moreover, the public has never had access to this information, and TTI will be prejudiced by disclosure of this information.

Declaration of Noreen Yeh ¶¶ 10–17 (filed Nov. 1, 2024). Ms. Yeh provides the numbers of the paragraphs that include material asserted to fall in the various categories.

With that backdrop, the Court notes that, of the remaining 10 paragraphs subject to redaction requests, most requested redactions are to specific numbers or percentages of users or accounts, specific times of peak usage, specific amounts of certain revenues, and specific numbers reflecting on how a particular ad campaign performed. For example, ¶ 96 includes this sentence: "TikTok's data shows that Vermont teens are most active between [REDACTED], which TikTok acknowledges is a 'strong indicator' that teens are not getting the recommended eight hours of sleep for their health and well-being." The redacted text is the specific time range when, as the sentence makes clear, Vermont teens are most active on TikTok. TikTok considers that time range to be confidential, specific usage information, in this case specific to certain Vermont users, that would give competitors insight in the market and how TikTok's platform performs in it, which could inform their business decisions, all without having to develop any of that information on their own. While the Yeh affidavit lacks complete particularized precision, it supports the conclusion that such precise market numbers are the sort of information for which secrecy gives a business advantage and that should remain sealed, unless counterbalanced by the public's need to know. As to that point, the Court has not been persuaded that the public's interest in access to the exact time ranges in the

redacted material is weighty. The gist of the sentence is fully clear without the redacted information.

This is reasonably so for all the remaining redaction requests that are limited to numbers, percentages, amounts, and times. Another example: "In a 2023 'Strategy Kickoff' document for its business partner Abercrombie Kids, TikTok admitted the App not only 'drives [p]arents' purchases but that [REDACTED] of Gen Z users have 'influenced parents to buy something seen on TikTok.'" The redacted text is the specific percentage of Gen Z users who, as the sentence makes clear, have so influenced their parents. This is obvious internal usage data the secrecy of which fairly obviously has business value to TikTok, and the accessible context makes the sentence clear to the public without needing to know the redacted detail.

The requested redactions limited to numbers, percentages, amounts, and times in the remaining 10 paragraphs are trade secrets/confidential business information and shall be kept sealed.

Requested redactions in 2 (¶¶ 33 and 104) of the remaining 10 paragraphs are different. Paragraph 33 includes this: "For example, [REDACTED], ran ads on TikTok targeting Vermont consumers. TikTok also ran ads promoting its App on [REDACTED] in the State." The redacted text reveals the company that ran ads on TikTok, and the media where TikTok ran its own ads. Without explanation, TikTok argues that these business relationships are not public information and does not further explain why revealing that someone ran an ad on TikTok, or TikTok ran its ad somewhere else, is any sort of trade secret. This redaction request fails on the most basic level. By definition, the information at issue is not confidential. There is no secrecy to preserve. When

someone runs an ad on TikTok, members of the public see it. When TikTok runs an ad somewhere, members of the public see it. The Court perceives no basis to seal the information, and the public's right to know has more weight. This request is denied.

The outstanding request in ¶ 104 also is not persuasive. In its entirety, ¶ 104 reads as follows:

> TikTok knows using this default setting without user consent is dangerous. In 2023, TikTok's [REDACTION 1] expressed extreme concerns about this feature in an internal company chat:
>
>> [REDACTION 2] This has high potential from a research perspective to lead to negative body image and body dysmorphia symptoms, especially among teenage girls.

Redaction 1 already has been approved—it identifies a specific employee for whom there are safety concerns. Redaction 2 conceals part of the internal company chat in which that employee describes certain features of the platform and that employee's negative view of those features. That employee's assessment of the effect of those features is not subject to redaction: they lead to negative body image, especially among teenage girls. For the most part, the redaction merely conceals features that users experience and thus know about. That they may experience those features without expressly choosing to do so does not alter the equation. Public users of TikTok know what the experience is, and the effect of those features and the employee's views about them already are accessible. TikTok's argument that this is "internal strategy information" is too vague to be persuasive. The Yeh affidavit has not persuaded the Court that this is confidential strategy or business information. This information may not place Defendant in a positive light, but the basic user experience on TikTok itself cannot be a trade secret. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere

fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."). In any event, the Court concludes that the public's right to know this information outweighs any latent business concerns.

<u>Conclusion</u>

For the foregoing reasons, TikTok's motion to seal in this case is granted, in part, and denied, in part, as follows:

(a) The redaction requests set forth in the March 4, 2025, appendix are granted, as set forth in that appendix, as to ¶¶ 3, 9, 15, 32, 37, 49, 64, and 96.

(b) The redaction request set forth in the March 4, 2025, appendix as to ¶ 33 is granted as to the two numerals and otherwise denied.

(c) The redaction request set forth in the March 4, 2025, appendix as to ¶ 104 addressing information not already redacted by operation of the Court's November 1, 2024, order is denied.

(d) Between this order and the November 1 order, approved redactions appear in the following paragraphs only: 3, 9, 15, 32, 33, 37, 49, 64, 69, 96, 104, 164, 166, and 191.

(e) Any information redacted by operation of this or the November 1 order shall be redacted from any future filings. Any such redacted filings must be accompanied by unredacted filings submitted under seal.

(f) Within 30 days, the parties shall file corrective filings including approved redactions only in relation to all filings from the complaint to present.

(g) The parties shall promptly notify the Court if, for any reason, any redacted information no longer appears to be exempt from public access under the Vt. R. Pub. Acc.

Ct. Rec.  If there is a dispute in that regard, the parties shall meet and confer in good faith prior to presenting the matter to the Court.

Electronically signed on Friday, March 21, 2025, per V.R.E.F. 9(d).

Timothy B. Tomasi
Superior Court Judge